## Richmond.

### WILLIAMS PRINTING COMPANY AND OTHERS V. SAUNDERS.

January 18, 1912.

Absent, Whittle, J.

1. LIBEL AND SLANDER—*Prior and Subsequent Defamation—Defamation of Others in the Community.*—In actions of slander or libel, other slanderous words, spoken or written of the plaintiff, whether before or after those laid in the declaration, may be given in evidence, to show malice on the part of the defendant when that is an issue in the case. So, likewise, false and defamatory words published of and concerning other members of the community may be given in evidence in order to show a reckless indifference to the rights of others, and as a basis for an inference that the words declared on were maliciously published.

2. LIBEL AND SLANDER—*General Damages—Loss of Profits.*—Loss of custom or diminution of profits is general, not special damage, and can only be proved where the words are actionable *per se.*

3. LIBEL AND SLANDER—*Pleadings—Evidence.*—The truth of defamatory words, written or spoken, cannot in this State be shown under the plea of not guilty, either in bar or in mitigation of damages, but can only be shown under a plea of justification.

4. LIBEL AND SLANDER—*Privileged Communications—Criticism of Officers.*— It is the right and duty of the citizen to criticise public officers and candidates for office with respect to their fitness for the office, and publications of the truth on this subject, with the honest intention of informing the people, are not libels. Proper criticism is privileged and imposes no liability unless express malice be shown.

5. LIBEL AND SLANDER—*Privileged Communications—Public Officers— Private Character.*—While proper criticism of the conduct or fitness of public officers and candidates for public office is privileged, the privilege does not extend to the imputation of moral delinquency to such persons, and he who attacks their private character, and attributes to them moral turpitude, must stand prepared to prove the truth of his statement under a plea of justification, otherwise the presumption is that the defamatory language, written or spoken, is false, and will, without more, support a verdict for substantial damages. Criticism and comment upon known or admitted facts are very different things from the assertion of unsubstantiated facts. If the

facts upon which the comment is made do not exist, the foundation for the comment fails.

6. LIBEL AND SLANDER—*Privileged Communications.*—A privileged communication is one made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable. Privileged communications are of four classes: 1. Where the author or publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests. 2. Anything said or written by a master in giving the character of a former servant. 3. Words used in the course of a legal or judicial proceeding, however hard they may bear upon the party of whom they are used. 4. Publications made in the ordinary mode of parliamentary proceedings.

7. LIBEL AND SLANDER—*Malice—Privileged Communications—Functions of Court and Jury.*—In all actions for defamation of character, whether by libel or slander, in order that damages may be recovered, malice must be alleged and proved. Where the communication is not privileged, malice may be presumed, but where the communication is privileged, even though it be but a qualified privilege, there is no presumption of malice, and in order to recover the plaintiff must prove actual malice, or malice in fact. Whether or not a communication, oral or written, is privileged, is a question for the court, and it is for the jury to say whether or not the privilege has been abused—that is, whether or not the publication was actuated by a malicious motive.

8. LIBEL AND SLANDER—*Liberty of the Press.*—By "liberty of the press" is merely meant that the publications in the press shall not be subject to antecedent censorship. The press enjoys no special privilege or immunity, but stands in all respects before the law upon the same footing as the great body of citizens.

9. INSTRUCTIONS—*Applied to Facts.*—Instructions are to be considered in the light of the facts on which they are based, and it may well be that an instruction proper in one case would be altogether improper in another case where the facts are entirely different.

10. COURTS—*Precedents as Authority.*—The value of a case as a precedent is measured by a consideration of how far the precise point for which it is relied upon as authority was presented in argument and considered by the court.

11. INSTRUCTIONS—*Jury Fully Instructed.*—It is not error to refuse even a proper instruction where the jury has already been sufficiently and properly instructed on the point covered by the rejected instruction.

12. LIBEL AND SLANDER—*Falsity of Words—Presumption.*—In the absence of a plea of justification, defamatory words published of another are conclusively presumed to be false.

13. LIBEL AND SLANDER—*Moral Delinquency—Belief in Truth.*—In an action to recover damages for the imputation of moral delinquency to the plaintiff, with reference to his private character (although a candidate for office), it is not sufficient to prove that the party publishing had good reason to believe and did believe the imputations to be true, as a publication of this character is not even conditionally privileged. From the publication of such libelous charges the law imputes malice as well as damages to the plaintiff, and the jury may, therefore, on proof of the publication only, render a verdict for substantial damages.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of trespass on the case in libel.   Judgment for the plaintiff.   Defendants assign error.

*Affirmed.*

The following instructions were tendered by the defendants, but were *rejected.*

"1. If the jury believe from the evidence that the defendants, or either of them, wrote and published, or published, the statements, or any of them, complained of in the declaration, of and concerning the plaintiff, yet the presumption of law is that he wrote and published or published them honestly, believing in the truth of such statements, although such statements in fact were false or founded upon the most erroneous information; and, in order for the plaintiff to recover in this action, the burden is upon him to prove to your satisfaction that such statements were written and published or published with actual malice in fact towards the plaintiff; that is, that the defendants were actuated by anger or ill will in what they published, with a design to causelessly or wantonly injure the plaintiff.

"2. The jury are instructed that it is admitted that at the time of the publication complained of the plaintiff, Clyde W. Saunders, was a candidate in a legalized primary election for membership upon the Democratic City Committee, and therefore the publication is to be viewed and considered as written of one who was a candidate for a public office.   When the plaintiff offered himself as a candidate for said position he threw out a challenge to all the residents of Richmond to canvass his qualification and fitness for that position, and his character and conduct.

"3. The jury are instructed that the conduct of candidates for public office is open to public criticism, and it is for the interest of society that their acts and their qualifications and fitness for office may be fully published, with fitting comments or strictures, and that whoever fills a public office renders himself open to public discussion, and if any of his acts are wrong, showing a lack of qualification or fitness for the office, he must accept the attack as a necessary, though unpleasant, circumstance attaching to his position. It is not only the right, but the duty, of a *citizen* to make complaint of any misconduct or act showing the lack of qualification or fitness for office of a candidate therefor, and their right and privilege to discuss the fitness or misconduct of such candidates with the tax-payers, voters, or residents in the city in which they live.

"4. The publications complained of, having been written and published of the plaintiff as a candidate, are privileged publications, if you believe from the evidence, *first*, that the statements therein complained of were true, or, *second*, that, although untrue, they are such as the defendant, Yoder, honestly held from information, then in his possession, as to the evidence, which he introduced before you, in regard to the plaintiff's employment by the Bell Telephone Company, and in regard to the plaintiff's recommending Percival and Jackson Wise as election officers, and the general reputation of the plaintiff as to his conduct in political matters, and that such belief was justified by the facts as you find them, or was such as the defendant, Yoder, might reasonably and did honestly hold from such facts, or that the words used were such as the defendant could honestly use under the circumstances.

"On the other hand, if you believe that the said statements in said publications were not true, and could not have any reasonable basis or foundation in the said evidence produced before you, then you must hold that the occasion was not privileged.

"In determining this question you are not to decide it merely upon the ground that you would not have formed the same opinion upon the same evidence. For opinions about and inferences from the conduct and acts of candidates for office, although

harsh, unjust, high-strung, or severely moral, or contrary to other opinions more reasonable, and although wrong, are not, when written and published, libelous, but, on the contrary, are permissible so long as there is a reasonable basis for them in the acts or words of the candidate about whom they are expressed.  The prevailing or majority opinion is often the wrong one, and for that reason the law gives full latitude to the expression of any and all opinions on things of general concern.  The law only requires that they be based on facts, and that the facts are reasonably capable of them.

"5. The jury are instructed that if, under the preceding instruction, they hold that the publications complained of were privileged, then the presumption of the law is that the defendant, Yoder, wrote and published them honestly, believing in the truth of such statements, although such statements in fact were false, or founded upon an erroneous opinion of or inference from the acts or words of the plaintiff, and, in order for the plaintiff to recover in this action, the burden is upon him to prove to your satisfaction that such statements were written and published with actual malice towards the plaintiff;  that is to say, that the defendant, Yoder, was actuated by ill will or anger towards the plaintiff in what he wrote and published, with a design to causelessly or wantonly injure the plaintiff.

"6. So much of the publication complained of as is set forth in the article headed 'Buying Votes in Manchester,' contained in the third count, having been written and published of the plaintiff as a candidate for membership of the City Democratic Committee, the good faith of the defendant in believing in the truth of the statements therein made is presumed, and, even if the jury believe that the preponderance of the evidence shows that the statements are false, yet such presumption is not overcome merely by proof of such falsity; but, in order for the plaintiff to recover thereon, he must prove that the defendants, or such one of them as he may seek to recover against, were or was moved to write and publish, or to publish, the said statements by actual malice in fact—that is to say, from an indirect motive, such as anger or ill will, or with a knowledge that they were untrue, or without caring whether they were true or false.

"7. You are also instructed that although the defendants are sued jointly, yet, if you believe that one or more of the defendants was not guilty of writing or publishing the alleged libel, then it is your duty to find in favor of such defendant or defendants."

In lieu of the foregoing instructions, the court instructed the jury as follows:

"1. The court instructs the jury that proprietors and printers of periodicals, such as *The Idea*, introduced in evidence here, are just as liable for what they print and publish as any other person. They are liable in the same manner and to the same extent.

"The fact that one is a candidate for an office in the gift of the people furnishes a legal excuse for fair and proper criticism, made in good faith and without malice, of such of his *acts* as are proven by the evidence; but, as respects his personal character, there is no such enlarged right of criticism, though he be a candidate for office.

"This enlarged right of criticism is confined to such of his acts as are established by the evidence.

"The publication of defamatory language, such as is set out in the first and second counts of the declaration herein, cannot be justified on the ground that it was published as criticism. The law protects not only the person and property of the citizen, but vigilantly guards as equally sacred his personal reputation and character.

"A publication in such a periodical, made either of a public officer or of a candidate seeking an office from the votes of the people, which falsely imputes to him crime or moral delinquency, is not a privileged publication, but from such a publication the law imputes malice to both the author and the printer thereof, and the person defamed is entitled to recover damages for any injury he may suffer thereby to his business, his feelings, and his reputation, unless the language itself be satisfactorily explained, and, if actual malice or a reckless disregard of the rights of the plaintiff is shown, the jury may award, in addition thereto, punitive or exemplary damages as hereinafter defined.

"2. The court further instructs the jury that the publication

or charges set out in the first and second counts of the declaration herein impute moral delinquency to the plaintiff, and they are not privileged communications. From the publication of them the law infers that they were falsely and maliciously made, and throws upon the defendants and each of them the burden of proving, by reliable and credible evidence, that the allegations were true, and also that the publications were made in good faith and without malice.

"3. The court further instructs the jury that under the pleadings and proof in this case, there being no plea filed nor proof offered by the defendants that the charges sued on are true, the jury must consider that said charges are untrue; and, the said articles not being privileged, the publication of them was an unlawful act on the part of the defendants, for which they must answer in damages, the amount of which is to be determined upon the principles laid down in the other instructions given the jury.

"4. The court further instructs the jury that while malice is the gist of this action, and proof that the defendants were actuated by malice in making said publications is necessary in order to a recovery against them, yet this does not mean malice or ill will towards the plaintiff, in the ordinary meaning of the term.

"Every man is intended to mean the natural and probable consequences of his acts, and is bound to answer for such consequences, and it is not necessary to render the acts complained of malicious that the defendants should have been actuated by a feeling of hatred or ill will towards the plaintiff, or that they entertained or pursued any bad purpose or design. On the contrary, they may have been actuated by a general good purpose, and have had a real and sincere design to bring about the reformation of matters or conditions. But, in pursuing that design, if they wilfully inflicted a wrong on the plaintiff, which was not warranted by the law, such acts are malicious in law, and are in themselves injurious.

"If the jury believe from the evidence that the charges in the declaration mentioned were composed by the defendant, Yoder, to be published in a periodical owned and edited by him, called *The Idea*, to be circulated in the city of Richmond; that the

same was printed by defendants, Rufus C. Williams and R. H. Williams, partners doing business as the Williams Printing Company; and that copies of such periodical containing the said charges so composed and printed were by the Williams Printing Company delivered to the said Yoder, or other persons, to be distributed and circulated in said city, and that the same were so circulated, then each and all of said defendants are equally guilty of a libel upon the plaintiff, which the law presumes to be false and malicious in the absence of an allegation and satisfactory proof of the truth of such charges, or a satisfactory explanation of the language used.

"5. The court further instructs the jury that the defendants were not justified in making the publications complained of in the first and second counts of the declaration, even though they may have honestly believed they had the right to publish them.

"Such honest belief may be considered by the jury in determining whether exemplary or punitive damages should be awarded on the ground of actual malice, provided they honestly believed that said charges were true, such honest belief being based upon the reasonable and probable cause for believing in the truth of said charges.

"Reasonable and probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the information thereof, relied upon by the defendants, that the plaintiff was guilty of the offenses charged in said publications.

"Rumors, however, and newspaper publications do not constitute reasonable and probable cause to the extent of justification, but as the character of the plaintiff is a matter which the jury should in every case consider on the question of damages, to the extent that they tend to prove the character of the plaintiff or bear upon that question, the jury can consider them both on the question of punitive damages or actual damages.

"6. The court further instructs the jury that an improper motive may be inferred from a wrongful act based upon no reasonable ground. Such improper motive constitutes malice in law, and to constitute such malice it is not necessary that such wrongful acts should be prompted by anger, malevolence, or vindictiveness.

"7. The court further instructs the jury that, in determining the amount of damages to which the plaintiff may be entitled, they shall take into consideration all the facts and circumstances of the case as disclosed by the evidence, the nature and character of the charges, the language in which they are expressed and its tendency, the occasion on which they were published, the extent of their circulation, the probable effect upon those to whose attention they came, and their natural and probable effect upon the plaintiff's business, personal feelings, and his standing in the community in which he lives; and, if under the other instructions herein he is entitled to recover, they should award him such sum by way of damages as will fairly and adequately compensate him,

"(1) For any loss or injury to his business, and

"(2) For the insult to him, including any pain and mortification and mental suffering inflicted upon him, and

"(3) For any injury to his reputation as a man and citizen.

"And if the jury believe, from all the evidence in the case, that the acts complained of were influenced by actual malice or a design to injure or oppress the plaintiff, he may recover in this action, in addition to such damages as those mentioned above, punitive or exemplary damages; that is to say, that the jury will not be limited in the amount of its verdict, for the plaintiff, to compensation to him for the actual damages sustained as above indicated; they may give him such further damages as they may think right, in view of all the circumstances of the case, as a punishment to the defendants and as a salutary example to others, to deter them from offending in a like manner.

"In determining whether defendants, in publishing and circulating the charges complained of, were influenced by actual malice or a design to injure or oppress the plaintiff, the jury should consider the relation of the parties to each other, the acts of the defendants before and after the publications in question, and all the circumstances surrounding them.

"8. The plaintiff, however, cannot recover on any word published after the bringing of this suit; or for any words published either before or after the bringing of the suit, except for the words declared on in this action; but if the words published after the

bringing of this suit show by a fair inference that the defendants were persisting in the charges contained in the declaration, or any of them, then the jury may consider such subsequently published words in aggravation of the damages.

"9. And if the jury believe from the evidence that the defendants were in the habit of publishing other false and defamatory charges in said periodical, concerning other members of the community, such publications may be considered as showing a reckless indifference to the rights and reputations of others, and as furnishing a basis for the inference that the publications in the declaration mentioned were malicious in fact; but before such other publications can be considered, the jury must be satisfied from the evidence that said other charges were false and defamatory.

"10. The court further instructs the jury that if they believe from the evidence that the words complained of in the third count of the declaration were falsely and maliciously printed and published by the defendants of and concerning the plaintiff, with the intent to insult him, and that such words, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, they are actionable; that is to say, the plaintiff has the right to sue the defendants therefor, and to recover, in this action, such damages as the jury may think proper under all the circumstances of the case, the amount of such damages to be determined upon the principles laid down in the other instructions herein. But as to this article, as to buying votes in Manchester, the jury are instructed that the language used means, in its fair interpretation, according to the usual construction and acceptation of the language, that if Saunders was elected it would be on account of the votes of those whose taxes were paid by the liquor people, and it is, in the opinion of the court, privileged, and to entitle plaintiff to recover on this count he must prove that the defendants were moved to publish the said statements by actual malice in fact—*i. e.*, from an indirect motive, such as anger or ill will, or with a knowledge that they were untrue, or without caring whether they were true or false.

"11. The court further instructs the jury that one may not

come forward, after he is sued for damages for a libel, and say that what he has published was not maliciously done, or that, in making the charge, he had no ill will against the plaintiff, or that he did not mean to charge the plaintiff with the offenses alleged by the libelous words. But such evidence may be considered by the jury on the question of actual malice, its weight and sufficiency being for them.

"Whether the publications complained of were in fact malicious, or were published with a design to injure and oppress the plaintiff, must be determined from the acts of the defendants appearing in the evidence and all the circumstances of the case.

"12. The court further instructs the jury that the publications appearing in the *Times–Dispatch*, and referred to on the cross-examination of the plaintiff, cannot be considered by the jury as furnishing any justification to the defendants for publishing the articles complained of in the declaration. Nor can they be considered by the jury in determining either

"(1) Whether the defendants had reasonable cause to believe that the charges complained of in the declaration were true, or

"(2) In mitigation of damages, except that they may be considered by the jury on the question of punitive or exemplary damages, as tending to rebut actual malice, their weight and sufficiency being for the jury; and this is also true as to the evidence as to the Richmond Traction Company and the Bell Telephone franchise and the plaintiff's connection therewith, and both the publications and these latter matters may be considered by the jury in so far as they bear upon the character of the plaintiff, and to this extent may be considered on the question of actual damages as well as upon the question of punitive damages or exemplary damages.

"The court instructs the jury that if they believe from the evidence that the defendants failed, within a reasonable time after the institution of this suit, to make an apology to the plaintiff for the publications sued on in the first and second counts of the declaration, and upon the trial of this case persisted in the truth of the said charges, without any reasonable ground to believe that they could establish the truth thereof, then the jury have the right to consider such evidence as to whether

the defendants were guilty of actual malice in publishing the said charges.   But it is for the jury to say, under all the facts and circumstances of the case, whether actual malice in publishing said charges is proven.

"14. The court further instructs the jury that if they believe from the evidence that the publications complained of in the declaration were of a grievous and wanton nature, and manifested a willful disregard of the rights of the plaintiff, actual malice need not be shown to entitle the plaintiff to exemplary or punitive damages.

"15. The jury are instructed that it is admitted that at the time of the publication complained of, the plaintiff, Clyde W. Saunders, was a candidate in a legalized primary election for membership upon the Democratic City Committee, and therefore the publication is to be viewed and considered as written of one who was a candidate for a public office.   When the plaintiff offered himself as a candidate for said position, he threw out a challenge to all the residents of Richmond to canvass his qualification and fitness for that position, and his character and conduct.   But, as explained in the other instructions given by the court, this does not give any one the right to impute a crime or moral delinquency to a candidate, unless they are prepared to plead and prove the truth of such imputation.

"16. The jury, should they, under the evidence and instructions, believe that the plaintiff is entitled to recover for injury to his business, are instructed that they cannot award the plaintiff any speculative or conjectural profits, and can only award such a sum, if any, as they believe, from the evidence proven, will compensate him, by way of general damages, for the injury, if any, occasioned by the publication.

"The jury are instructed that there can be no recovery on account of Mr. Saunders' defeat in the election for the City Committee, the law having no definite measure capable of making reasonably certain such damages, if any, and because such damages are too remote.   And the jury are further instructed that there is among the instructions on the question of injury to business, not read except by the court, one instruction which you will consider on this question, and the court, in addition, tells the jury

that no damages can be allowed for the loss of business that is not proven clearly and satisfactorily to the jury as being directly the result of the publications declared on."

*Meredith & Cocke*, for the plaintiff in error.

*Scott, Buchanan & Cardwell* and *D. H. & Walter Leake*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Law and Equity Court of the city of Richmond, rendered in an action for libel brought by Clyde Saunders against Rufus C. Williams and Roy H. Williams, partners doing business as the Williams Printing Company, and Adon A. Yoder. There was a verdict and judgment for the plaintiff for $1,600.

During the progress of the trial the defendants reserved a number of exceptions to the rulings of the court, the propriety of which will be the subject of inquiry.

The declaration contains three counts. The first two set forth as libels certain publications which were printed and published by the Williams Printing Company and of which Yoder was the author. The third count is under the statute for insulting words, and sets forth the publications mentioned in the first and second counts and one peculiar to itself, entitled "Buying Votes in Manchester and Richmond."

There was no demurrer to the declaration, and the only plea was that of *not guilty;* but the defendants, at the request of the plaintiff, stated their grounds of defense as follows:    (1) Not guilty;    (2) privileged communication;    (3) fair or proper criticism or comment upon the plaintiff when running for public office or position;    (4) no malice; and    (5) erroneous construction of the words of the publication. No plea of justification was filed; the defendants deeming it unnecessary so to do.

Numerous exceptions were taken to the introduction of evidence offered by the defendant in error, and admitted by the court, despite the objection of plaintiffs in error. They may be con-

sidered under three heads: (1) Articles published in *The Idea* of and concerning the defendant in error, Saunders, prior to the institution of the suit, other than those mentioned in his declaration; (2) articles published after the institution of the suit of and concerning the defendant in error; and (3) articles published which did not refer to defendant in error, but to others, and were admitted as tending to prove the general scope and character of *The Idea*, as edited by Yoder, and printed and published by the Williams Printing Company. All of these articles, embraced in the three classes, were admitted by the court for the purpose of showing malice, and for that purpose only, and the jury were instructed that the plaintiff could not recover for any words published, either before or after the bringing of the suit, except the words declared upon; and with reference to those publications concerning other members of the community than the plaintiff, the jury were told that they might be considered as showing a reckless indifference to the rights of others, and as furnishing a basis for the inference that they were malicious in fact, but that before such other publications could be considered the jury must be satisfied from the evidence that they were false and defamatory.

In Newell on Libel and Slander, at p. 331, it is said: "Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on, or even after the commencement of the action, are admissible to show the animus of the defendant, and for this purpose it makes no difference whether the words tendered in evidence are themselves actionable or not, or whether they be addressed to the same party or to some one else. Such other words need not be connected with or refer to the defamatory matter sued on, provided they in any way tend to show malice in the defendant's mind at the time of publication. And not only are such other words admissible in evidence, but also the circumstances attending the publication, the mode or extent of their repetition. The more the evidence approaches proof of a systematic practice of libeling or slandering the plaintiff, the more convincing it will be."

Odgers on Libel and Slander, pp. 270–'73, inclusive, is to precisely the same effect; and adds: "The jury no doubt should be

22

told, whenever the other words so tendered in evidence are in themselves actionable, that they must not give damages in respect of such other words, because they might be the subject matter of a separate action; but the omission by the judge to give such a caution will not amount to a misdirection. But the defendant is always at liberty to ...prove the truth of such other words so given in evidence, for he could not plead a justification as to. them, as they were not set out on the record."

"It must be remembered," says Odgers, "that this evidence of former or subsequent defamation is only admissible to determine *quo animo* the words sued on were published; that is, they are only admissible when *malice in fact* is in issue. If there is no question of malice, no such other libels would be admissible, unless they had immediate reference to the libel sued on; and even then it would be better that they should be set out in the statement of claim. * * * And it is now clear law that whenever the question of malice or *bona fides* is properly about to be left to the jury, evidence of any previous or subsequent libel is admissible, even though it be more than six years prior to the libel sued on; and even though a former action has been brought for the libel now tendered in evidence and damages recovered therefor. The law is the same in America." See *Russell* v. *Macquister*, 1 Campbell 49, n.; *Camfield* v. *Bird*, 3 C. & Kir. 56;. 2 Starkie on Slander, p. 55; *Pearson* v. *Lemaitre*, 5 M. & Gr. 719..

Objection was made to questions asked the defendant in error, as follows:

"Q. Has that decline in your business been marked or otherwise? A. Very perceptible, commencing in July. The first notice the books show that trade had fallen off was in July.

"Q. What, in figures, was the amount of that diminution? A. About $4,000—three thousand, nine hundred and some dollars.

"Q. Can you state whether there was any other reason, either known to you or reasonably to be conceived by you, for that diminution, other than the publication of this libel? A. I know of none whatever, as I have lost no contract, and the contract work was excluded from that calculation. It was taken from the regular current trade work."

The words alleged and proved to have been used by the de-

fendant must have been injurious to the plaintiff's reputation, and are, therefore, actionable *per se;* and the plaintiff may recover a verdict for substantial damages without giving any evidence of pecuniary loss.    Odgers on Libel and Slander, sec. 289. And at page 314 the same author says: "Loss of custom or diminution of profits  *  *  *  is general, not special damage, and can only, therefore, be proved where the words are actionable *per se.*"

And in 25 Cyc., p. 505, it is said: "When the defamation complained of is one affecting plaintiff's business, from which the law presumes general damage, evidence of general diminution or loss of business is admissible in proof of general damages."

It is further to be observed here that the jury were instructed not to award the plaintiff speculative or conjectural profits, but only such sum, if any, as they believe from the evidence will compensate him by way of general damage for the injury, if any, occasioned by the publication.

Before considering the instructions to the jury, we shall consider two propositions of law—first, is it permissible for the defendant to an action for defamation such as that under consideration to allege and prove, under the plea of not guilty, that the words spoken or written were true, or must he plead a special plea of justification?

The plaintiffs in error rely, with confidence, upon the case of *Commonwealth* v. *Morris*, 1 Va. Cas. (3 Va.) 176, in support of their contention that the plea of justification is not necessary in this State, where the publication concerns a candidate for office.    That case was an information filed against the defendant, who pleaded not guilty, on which the issue was joined, and tendered two special pleas, to the effect that it was lawful for him to write and publish the paper writing charged in the information to have been written and published by him, because he saith that all the charges therein set forth were true, and all the acts therein charged to have been done and committed were in fact and truth done and committed.    The second plea was also one of justification, and differed only from the first in that it recited that the plaintiff, at the time the writing in question was written and published, and before that time, was a public officer—to-wit, the

high sheriff of the county; and then set forth that the charges were true as in the first special plea.    The circuit court adjourned to the general court, and requested its decision upon the following points: 1st.    Whether the defendant to an indictment or information for a libel can in all cases plead the truth of the libel in justification?    2d. If not, whether he can give the truth of such libel in evidence on the plea of not guilty.    3d. Whether in this particular case the defendant can, in either way, and which, give evidence of the truth of the matters stated in the writing alleged to be libelous. .

The general court held as follows: "It is the unanimous opinion of the court that, by the common law, truth is no justification of a libel, and cannot as such be given in evidence on an indictment or information for the offense.    In this Commonwealth, the second article of the Bill of Rights having declared 'that all power is vested in, and consequently derived from the people, that magistrates are their trustees and servants, and at all times amenable to them,' it follows, as a necessary consequence, that the people have a right to be informed of the conduct and character of their public agents.    In the case of an indictment or information for a libel against public officers, or candidates for public office, truth is a justification, and may be given in evidence as such under the general issue, and this forms an exception to the general rule established by the common law, but even in such case any libelous matter which does not tend to show that the person libeled is unfit for the office cannot be justified because it is true."

In the note to that case it is said that "Although, in a criminal prosecution for a libel, the truth forms no justification in England, in any case whatever, yet, in mitigation of the fine, it may be shown to the court, after the verdict rendered.    In Virginia, the truth may be given in evidence before the jury in mitigation of the fine, because here it is rendered, by act of Assembly, the duty of the jury to assess the fine."

It is admitted that the plaintiff, Saunders, was a candidate for office, and within the class referred to in *Commonwealth* v. *Morris*, and that the defendants are entitled to its protection, if that case is to be considered as establishing the law of this State in actions for defamation.

Since that case was decided more than a century has elapsed, and, so far as we have been able to discover, it is the only reported case in our books of a criminal libel.   Many civil suits for damages for defamation, however, are to be found in our reports, covering almost every conceivable aspect of the subject, and *Common-wealth* v. *Morris* appears never to have been cited.   In Minor's Law of Crimes it is referred to, under the head of "Offenses Against the Public," at page 165.   It is reported also in 5 Am. Dec. 515, with no other comment than the citation of *Common-wealth* v. *Clapp*, 4 Mass. 163, reported also in 3 Amer. Dec. 212, where a different conclusion was reached.   Indeed, wherever we have found any mention made of *Commonwealth* v. *Morris*, in digests, encyclopedias, or text-books, it has always been with reference to a criminal prosecution.   Either that case must be held to apply only in prosecutions by the Commonwealth, or its authority must be considered as completely overruled by subsequent decisions of this court.

In *Bourland* v. *Eidson*, 8 Gratt. (49 Va.) 27, decided in 1851, all the Virginia authorities upon the subject of defenses in actions of slander were considered.   Judge Allen, speaking of *Cheatwood* v. *Mayo*, 5 Munf. (19 Va.) 16, said:   "The defendant offered in mitigation of damages, and not by way of justification, to prove facts which, if they did not altogether, almost established the truth of the charge.   He could not offer such evidence in bar of the action, because he had failed to file the plea of justification.   But if permitted to introduce it in mitigation of damages, the same impression would be made on the minds of the jury, and the plaintiff could not know what defense he was to meet. The case therefore establishes that evidence falling short of a full justification, but tending to prove the truth of the words charged, and leaving that impression on the minds of the jury, is inadmissible, notwithstanding the declaration that it is offered in mitigation of damages, and not by way of justification."

The case of *McAlexander* v. *Harris,* 6 Munf. (20 Va.) 465, was to the same effect.

The syllabus of the case of *Bourland* v. *Eidson, supra,* is that "In an action of slander, under the plea of not guilty, the defendant may, in mitigation of damages, prove any facts as to the conduct

of the plaintiff, in relation to the transaction which was the occasion of the slanderous language complained of, which tend to excuse him for uttering the words, provided the facts do not prove or tend to prove the truth of the charge complained of, but in fact relieve the plaintiff from the imputation involved in it."

Language could not be used more strongly to establish the proposition that the truth of the charge cannot be shown under the plea of not guilty.

In Newell on Slander and Libel, p. 651, it is said: "The defendant cannot prove, under the plea of the general issue, at common law, the truth of the defamatory words, either in bar of the action or in mitigation of damages. If he desires to confess the publication of the defamatory words and avoid the consequences by asserting the truth of the same, he can do so under the plea of justification. The truth of the defamatory words is, if pleaded, a complete defense to any action of libel or slander, though alone it is not a defense in a criminal trial."

The same author, at p. 652, says: "A justification must always be specially pleaded, and with sufficient particularity to enable plaintiff to know precisely what is the charge he will have to meet. If the libel makes a vague general charge—as, for instance, that the plaintiff is a swindler—it is not sufficient to plead that he is a swindler. The defendant must set forth the specific facts which he means to prove in order to show that the plaintiff is a swindler. The plea is always construed strictly against the party pleading it. It must justify the whole of the words to which it is pleaded, and set forth facts issuably."

It would seem, therefore, to be a dangerous plea, and one not lightly to be resorted to. It has the further effect, if not maintained, of being a strong circumstance going to establish malice, and it is not to be wondered at that cautious and astute counsel, in difficult or doubtful cases, do not rely upon it.

See 1 Starkie on Slander, 466, where the law is thus stated: "If the defendant means to rely on the truth of that which he has published, either in bar of action or mitigation of damages, he must plead it specially."

In Townshend on Slander and Libel, note to sec. 211, it is said: "The defense of truth must be pleaded, and cannot be given

in evidence under the general issue, either in bar or in mitigation of damages"; and in support of this proposition there is a great array of authorities, English and American.

In 4 Minor's Inst. (1st. ed.), Pt. 1, at page 384, it is said: "It seems clear, therefore, that the legislature designed to change the previous policy, as expounded in those cases of *Brooks* v. *Calloway* and *Moseley* v. *Moss*, and to allow and require the truth to be pleaded specially in bar of the action, as at common law. If so, the truth of the specific accusation cannot be given in evidence under the general issue in mitigation of damages, and much less can facts of bare suspicion." See *Underwood* v. *Parks*, 2 Strange 1200, and the Virginia cases to which we have already referred; *Sweeney* v. *Baker*, 13 W. Va. 158, 31 Am. Rep. 757; 1 Barton's L. Pr., sec. 126; *Hogan* v. *Wilmoth*, 16 Gratt. (57 Va.) 80.

Authorities might be multiplied almost without limit to the same effect, but why should authority be cited when the controversy is covered by statute?

In the Code of 1849, p. 669, there was first enacted a statute which has passed into our present Code as section 3375, which declares that "In any action for defamation, the defendant may justify by alleging and proving that the words spoken or written were true, and (after notice in writing of his intention to do so, given to the plaintiff at the time of or for pleading to such action), may give in evidence, in mitigation of damages, that he made or offered an apology to the plaintiff for such defamation before the commencement of the action.   *   *   *"

The language used, that "the defendant may justify by alleging and proving that the words spoken or written were true," plainly intends that the truth shall be specially pleaded, for if the legislature had intended that the proof should be given in under the plea of not guilty, there was no occasion to require that it should be alleged.

We conclude, therefore, that in this State, in an action of defamation, the truth of the publication, if relied upon by the defendant, either as a bar or in mitigation of damages, must be shown under a special plea of justification, and not under a plea of not guilty.

The second contention upon the part of plaintiff in error is that, as Saunders was a candidate for office, the occasion of the publications complained of was privileged; and that may be conceded. A candidate for office is considered as putting his character in issue, with respect to his fitness or qualification for the office he seeks, and publications of the truth on this subject, with the honest intention of informing the people, are not libels.

"A privileged communication is one made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, and which contains matter which, without the occasion upon which it is made, would be defamatory and actionable." Newell on Libel and Slander, p. 388.

Privileged communications are of four classes: 1st, where the author or publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests; 2d, anything said or written by a master in giving the character of a servant who has been in his employment; 3d, words used in the course of a legal or judicial proceeding, however hard they may bear upon the party of whom they are used; 4th, publications duly made in the ordinary mode of parliamentary proceedings.

The privilege may constitute a bar to an action—for instance, words used in the course of a legal or judicial proceeding, or publications made in the ordinary mode of parliamentary proceedings; but the privilege with which we are here to deal, which grows out of the fact that the plaintiff, Saunders, was a candidate for office, is known as a qualified privilege.

In all actions for defamation of character, whether by libel or slander, in order that damages may be recovered, malice must be alleged and proved. Where the communication is not privileged malice may be presumed, but where the communication is privileged, even though it be but a qualified privilege, there is no presumption of malice, and in order to recover the plaintiff must prove actual malice or malice in fact. Whether or not a communication, oral or written, is privileged, is a question for the court; and it is for the jury to say whether or not the

privilege has been abused—that is to say, whether or not the publication was actuated by a malicious motive.  *Chaffin* v. *Lynch*, 83 Va. 106, 1 S. E. 803;  *Tyree* v. *Harrison*, 100 Va. 540, 42 S. E. 295.

Publications of the truth regarding the character of a public officer, and relating to his qualifications for such office, made with intent to inform the people, are not libelous;  but the publication of falsehood and calumny against public officers and candidates for public office, is a very high offense.  *Commonwealth* v. *Clapp*, 4 Mass. 163.

"The term 'privileged'," says Newell on Slander and Libel, at p. 566, "as used by the judges, does not mean privileged by reason of the occasion, in the strict legal sense of that term.  The meaning really is that the words are not defamatory—that criticism is no libel.  If such criticism was privileged in the strict sense of the word, it would in every case be necessary for the plaintiff to prove actual malice, however false and however injurious the strictures may have been;  while the defendant would only have to prove that he honestly believed the charges himself in order to escape all liability;  and this clearly is not the law."

"Criticism and comment on well known or admitted facts are very different things from the assertion of unsubstantiated facts. A fair and *bona fide* comment on a matter of public interest is an excuse for what would otherwise be a defamatory publication. The statement of this rule assumes the matters of fact commented upon to be somehow ascertained.  It does not mean that a man may invent facts, and comment on the facts so invented in what would be a fair and *bona fide* manner, on the supposition that the facts were true.  If the facts, as a comment upon which the publication is sought to be excused, do not exist, the foundation fails. There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public.  But the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed, or discreditable language used.  It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct.

To state matters which are libelous is not comment or criticism." Newell, p. 568.

"So long as a writer confines himself to discussing the public conduct of public men, the mere fact that motives have been unjustly assigned for such conduct is not of itself sufficient to destroy this defense. A line must be drawn between criticism upon public conduct and the imputation of motives by which that conduct may be supposed to be actuated; one man has no right to impute to another, whose conduct may be fairly open to ridicule or disapprobation, base, sordid, and wicked motives, unless there is so much ground for the imputation that a jury shall find not only that he had an honest belief in the truth of his statements, but that his belief was not without foundation." Newell, p. 572.

While discussing the general principles of the law of libel and slander pertinent to the case in hand, it will not be improper to refer to the "liberty of the press," which has been much urged in argument.

The press has no exclusive privilege. It does not matter by whom the report is published; the privilege is the same, as a matter of law, for a private individual as for a newspaper. Newell, p. 552.

Speaking on this subject, Mr. Cooley says: "A candidate for public office does not surrender his private character to the public, and he has the same remedy for defamation as before; and the publication of false and defamatory statements concerning him, whether relating to his private character or public acts, is not privileged. * * *

"Liberty of the press is not license, and newspapers have no privilege to publish falsehoods or to defame, under the guise of giving the news. It is held that the press occupies no better position than private persons publishing the same matter; that it is subject to the law, and if it defames it must answer for it." Cooley on Torts (3d ed.), 443.

By "liberty of the press" indeed is merely meant that the publications in the press shall not be subject to an antecedent censorship, but, in the language our bill of rights, "any citizen

may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right."

We come now to the consideration of the instructions asked for by plaintiffs in error and rejected by the court, and those given to the jury by the court, to which the plaintiffs in error excepted.

Instruction No. 1, which was refused, was approved in *Gatewood* v. *Garrett*, 106 Va. 552, 56 S. E. 335, as applied to the facts appearing in that case, in which it seems that the evidence was not made a part of the record by proper bill of exceptions; but as instructions are to be considered in the light of the facts proved, it may well be that an instruction proper upon one state of facts would be altogether improper upon a different state of facts. Then, too, the value of a case as a precedent is affected by the consideration that the precise point for which it is relied upon as authority was presented in argument and considered by the court. The opinion says that it was not denied in that case that the instruction asked for was a correct statement of the law; and comparing the facts before us with those existing in *Gatewood* v. *Garrett*, no two cases could be more dissimilar.

Instruction No. 3, it is claimed, is also supported by the opinion in *Gatewood* v. *Garrett*, *supra*, and we accept as law the instruction as it appears in *Gatewood* v. *Garrett*. It declares that the conduct of candidates for public office is open to public criticism, and it is for the interest of society that their acts may be fully published with fitting comments or strictures; but one of the differentiating features between the case before us and *Gatewood* v. *Garrett* is that, while the comments and strictures in that case were fitting— that is to say, suitable and proper to the occasion—those set out in the declaration in this case transcend the bounds of propriety prescribed by law, are in excess of the right and duty of a citizen to make complaint of any misconduct or act showing a lack of qualification or fitness for office of a candidate, and attribute moral turpitude to the defendant in error.

The second instruction asked for and refused is, we think, sufficiently covered by instruction No. 15, which was given by the court.

Instruction No. 4 was properly refused, because it left it to the jury to say whether or not the publications were true, when,

there being no plea of justification in the case, they are conclusively presumed to be false; and, secondly, that their verdict should be for the defendants if Yoder's expressed belief was justified by the facts as the jury found them, or was such as he might reasonably and justly hold from such facts—"then the jury must hold that the occasion was privileged."

The law is, as we have seen, that it is for the court to say whether or not the occasion is a privileged one, and, if it be one of privilege, whether a qualified or an absolute privilege, and by its instructions to guide the jury to a right conclusion. As the privilege with respect to the criticism of public officers, or candidates for public office, does not extend to the imputation of moral delinquency with reference to their private character, such imputations are libelous, and the party making them may be held liable therefor in a suit for slander, unless he can prove the charges to be true. In such case it is not sufficient to prove that the party publishing had good reason to believe and did believe them to be true, as a publication of this character is not even conditionally privileged. From the publication of such libelous charges the law implies malice, as well as damages to the plaintiff; and the jury may, therefore, on proof of the publication only, render a verdict for substantial damages. *Sweeney* v. *Baker*, 13 W. Va. 158, 31 Am. Rep. 757. And just here we will state that this case is one of unusual authority. It was an action for libel upon a man who was a candidate for the House of Delegates of West Virginia. The opinion was delivered by a judge of great distinction, and is a mine of learning and sound reasoning. It cites all of the Virginia cases upon the subject prior to the creation of the State of West Virginia, such cases being as binding authority in the new State as in the old. The case, therefore, may be accepted without hesitation as one of the highest authority.

Instruction No. 5 depends upon No. 4, and must fall with it.

No. 6, while rejected in the form in which it was offered, was given with an addendum in No. 10 of the instructions by the court, which is, we think, a correct and sufficient statement of the law.

Instruction No. 7 was properly refused, if for no other reason,

because there is nothing in the evidence which would have warranted the jury in reaching any such conclusion as the instruction suggests.

We are of opinion that the cases and text-books consulted establish the following propositions:

1. That the truth of defamatory words, written or spoken, cannot be shown under the plea of not guilty, but that there must be a plea of justification.

2. That it is the right and duty of the citizen to criticise public officers and candidates for public office, and that proper criticism is privileged, and imposes no liability unless express malice be shown; that it is for the court to say whether or not the occasion is privileged, and for the jury to say whether or not it has been abused.

3. That, while proper criticism of the conduct or fitness of public officers and candidates for public office is privileged, the privilege does not extend to the imputation of moral delinquency to such persons, and that he who attacks their private character and attributes to them moral turpitude must stand prepared to prove the truth of his statement under a plea of justification; otherwise the presumption is that the defamatory language, written or spoken, is false, and will, without more, support a verdict for substantial damages.

4. That the press enjoys no special privilege or immunity, but stands in all respects, before the law, upon the same footing as the great body of citizens.

For these reasons we are of the opinion that the judgment should be affirmed.

*Affirmed.*