## Richmond.

## CARPENTER V. MEREDITH.

### March 21, 1918.

1. AMENDMENTS—*Liberality in Allowing.*—It is the settled policy of our law to allow amendments in pleadings and to disregard defects in procedure which do not operate to the prejudice of the substantial rights of the opposite party.

2. AMENDMENTS—*Liberality in Allowing—Case at Bar.*—In an action for libel and slander, at the April rules, 1916, the plaintiff filed a declaration containing twelve counts, six under the common law and six under the statute for insulting words. At the succeeding term, upon demurrer by the defendant, the court permitted the plaintiff to eliminate from the declaration the six common law counts and to amend as to the remaining counts, which he did by filing an amended declaration. On the day following the filing of this amended declaration the defendant moved for a continuance and the court intimated a purpose to grant this motion. The plaintiff then asked and was allowed, over defendant's objection, to file a second amended declaration. Defendant's motion for a continuance was then renewed and granted, whereupon, the plaintiff asked and was allowed to withdraw the second amended declaration. On the calling of the case at the next term, the defendant moved the court to require the plaintiff to state whether he was going to trial on the original declaration or on the first amended declaration, and counsel for plaintiff stated that he would go to trial on both. Defendant objected, but the objection was overruled. The defendant then asked and was permitted, over the plaintiff's objection, to file a plea of the statute of limitations to the first count of the amended declaration. Thereupon, the plaintiff, over defendant's objection, was permitted to amend his first amended declaration, and this he did by filing an amended statement of the first count thereof and repeating literally the second and third counts thereof. The defendant moved to reject the first count as thus amended on the ground that it was barred by limitation, which motion was overruled and the defendant entered a plea of not guilty. The defendant claimed that the second amended declaration superseded all others, and that its withdrawal left the case without any pleading. While

the record was .not entirely satisfactory upon the subject, it seems reasonably clear that the court and the parties under-. stood that the defendant's plea of the statute of limitations and of not guilty were directed to the last amended declaration, which purported to amend the six statutory counts of the original as formerly modified by the first amendment.

*Held:* That if it could be conceded that the procedure was irregular, the practical result was in accord with the settled policy of the law, as set forth in the preceding headnote.

3. AMENDMENTS—*Withdrawal—Case at Bar.*—The second amended declaration was withdrawn on the day on which it was filed. The cause stood practically as if the second amendment had never been filed. The filing and immediate withdrawal of the latter could not have prejudiced the defendant.

4. LIBEL AND SLANDER—*Limitation of Actions—Amendment—Case at Bar.*—It was urged that the insulting words attributed to the defendant in the first count of the amended declaration constituted a new cause of action. If this position was sound, the plea of the statute was good, because the words were alleged to have been uttered at a date more than twelve months prior to the amendment. A careful comparison of the original and amended averments, however, lead the Supreme Court of Appeals to the conclusion that the new matter had reference to and was merely an amplification of the charges contained in the original, and that the case did not, as claimed by the defendant, fall within the influence of the decision of that court in *Irvine* v. *Barrett,* 119 Va. 587, 89 S. E. 904.

5. LIBEL AND SLANDER—*Privilege—Candidate for Public Office—Plea of Justification—Case at Bar.*—As the plaintiff was the incumbent of a public office and a candidate for re-election, this rendered the occasion privileged, and it was the duty of the court to so declare, leaving it to the jury to determine whether the privilege was abused—that is to say, whether it was used in bad faith and with malice. But in the case at bar there could be no doubt that the language alleged to have been used by the defendant went beyond the realm around which the law, as recognized in this State, has thrown the protection of privilege, and constituted charges of moral turpitude and criminal dishonesty. There being no plea of justification, the charges were conclusively presumed to be false, and the trial court properly so instructed the jury. The failure to plead the truth of the words cut off any inquiry into that question. The only questions for the jury, therefore, were whether the defendant actually used the words, and, if so, what damage he should pay.

These questions were submitted to the, jury upon proper in-structions and their verdict against the defendant must end the case.

6. LIBEL AND SLANDER—*Privilege—Candidates for Public Office.*— The conduct of candidates for public office is open to public criticism, and it is for the interest of society that their acts may be fully published with fitting comments or strictures. But the strictures and comments must not transcend the bounds of propriety prescribed by law. While a citizen has the right to make complaint of any misconduct or act showing a lack of qualification or fitness for office of a candidate, he may not falsely attribute moral turpitude to him.

Error to a judgment of the Circuit Court of Brunswick county, in an action of libel and slander.

*Affirmed.*

The opinion states the case.

. *B. A. Lewis* and *E. R. Turnbull, Jr.,* for the plaintiff in error.

*Marvin Smithey* and *S. V. Southall,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This is an action of slander and libel brought by T. H. Meredith against W. R. Carpenter in which there was a ver-dict and judgment for the plaintiff.

The history of the pleading in the case presents a rather anomalous and confusing situation and one which cannot be stated without regrettable prolixity and verbal repeti-tion. It must be set out, however, because it forms the basis of one of the assignments of error.

At the April rules, 1916, the plaintiff filed a declaration containing twelve counts, six under the common law and six under the statute for insulting words. At the succeed-

ing September term of the court the defendant demurred to the declaration and to each count thereof, and thereupon, pending argument on the demurrer, the court, upon motion of the plaintiff, permitted him to eliminate from the declaration the six common law counts and to amend as to the remaining counts, which he did by filing an amended declaration containing three counts, the first of which purported to amend four of the statutory counts, the second to amend a fifth and the third to amend a sixth thereof. This first amended declaration was filed on the 5th day of September. The defendant then asked for time in which to prepare a demurrer to the amendment, and the hearing was adjourned until the next day, September 6th, at which time defendant moved for a continuance. The court intimated a purpose to grant this motion, and the plaintiff then asked and was allowed, over defendant's objection, to file a second amended declaration purporting to amend each of the counts as theretofore amended. The motion for continuance was then renewed by defendant and was granted, whereupon, the plaintiff asked and was allowed to withdraw the second amended declaration.

On the calling of the case at the next term, the defendant moved the court to require the plaintiff to state whether he was going to trial on the original declaration or on the first amended declaration, and counsel for plaintiff stated that he would go to trial on both. This course was objected to by the defendant, but the objection was overruled. The defendant then asked and was permitted, over the plaintiff's objection, to file a plea of the statute of limitations to the first count of the amended declaration. Thereupon, the plaintiff, over defendant's objection, was permitted to amend his first amended declaration, and this he did by filing an amended statement of the first count thereof and repeating literally the second and third counts thereof. The defendant moved the court to reject the first count as thus

amended on the ground that it was barred by limitation. The latter motion was overruled and the defendant entered a plea of not guilty.

The first, second, third and fourth assignments of error, discussed together in the petition, rest mainly upon the claim that the second amended declaration superseded all others, and that its withdrawal at the September term left the case without any pleading. The gist of these assignments may be summed up in the contention, quoted literally from the petition, "that the court was without jurisdiction to try a case that was not properly on the docket, and it was its duty to remand the same to rules and not let the plaintiff fall back on the many counts in the declarations that had been filed and ceased to be a part of the record; all prior declarations having been superseded by other declarations and the last withdrawal of the only declaration in the case."

The second amended declaration was withdrawn on the day on which it was filed. The cause stood practically as if the second amendment had never been filed. The filing and immediate withdrawal of the latter could not have prejudiced the defendant. While the record is not entirely satisfactory upon that subject, it seems reasonably clear that the court and the parties understood that the defendant's plea of the statute of limitations and of not guilty were directed to the last amended declaration, which purported to amend the six statutory counts of the original as formerly modified by the first amendment. This seems to have been the view entertained by the court, and if we concede that the procedure was irregular, the practical result was in accord with the settled policy of our law to allow amendments in pleadings and to disregard defects in procedure which do not operate to the prejudice of the substantial rights of the opposite party. *Standard Paint Co.* v. *E. K. Vietor & Co.,* 120 Va. 595, 605, 610, 91 S. E. 752; Acts 1914, chap. 331, page 641.

The next assignment of error presents the question of the sufficiency of the plea of the statute of limitations to the first count of the amended declaration. It is urged that the insulting words attributed to the defendant in this amendment constitute a new cause of action. If this position be sound, the plea of the statute was good, because the words were alleged to have been uttered at a date more than twelve months prior to the amendment. A careful comparison of the original and amended averments, however, lead us to the conclusion that the new matter had reference to and was merely an amplification of the charges contained in the original, and that the case does not, as claimed by the defendant, fall within the influence of the decision of this court in *Irvine* v. *Barrett*, 119 Va. 587, 89 S. E. 904.

We pass now to the controverted questions bearing more directly upon the merits of the case, and in this connection it becomes necessary to state briefly the material facts.

In the summer of 1915, T. H. Meredith, the then incumbent of the office of treasurer of Brunswick county, was a candidate for renomination to the same office by the Democratic party in a legalized primary election to be held in August of that year. W. R. Carpenter, the defendant in this action, espoused the cause of one of Meredith's competitors. The contest became spirited and acrimonious. During the course of the campaign, according to evidence introduced on behalf of the plaintiff, Carpenter made the following statements, among others, about Meredith:

"Tom Meredith, the damn rascal, have reported taxpayers of this county insolvent and have gotten the accounts by some means out of the clerk's office. They are not there. He have reported J. M. Phillips insolvent. If you will go with me to Mr. B. A. Lewis' office I will show you a list certified by the clerk of fifty odd that he have done in the same way. * * *

"Tom Meredith, the damn rascal, offered L. P. Brown this morning $10.00 for a tax receipt to keep it out of Otis Hall's and myself's hands.    *    *    *

"Tom Meredith, the God damn rascal, have offered L. P. Brown a bribe."

That "Mr. Meredith had stolen a right smart of money that Otis Hall ought to have."

At the conclusion of the evidence the defendant requested the court to instruct the jury as follows:

"The court instructs the jury, that if they believe from the evidence that the defendant spoke words, or any of them, as charged in the declaration of and concerning the plaintiff, yet the presumption of law is that he spoke them honestly, believing in the truth of his statement, although such statements in fact were false or founded upon the most erroneous information; and, in order for the plaintiff to recover in this action, the burden is upon him to prove to your satisfaction that such statements were spoken with actual malice in fact towards the plaintiff."

The court gave this instruction as asked, but added, by way of amendment, over the objection and exception of the defendant, the following clause: "unless they believe from the evidence that the words spoken, or written of, or concerning the plaintiff, imputed to him moral delinquency or moral turpitude."  ·

It will be observed that the court, by this instruction, recognized the occasion of the alleged conversation as privileged. The plaintiff contends that this was error in favor of the defendant. We do not think so. The plaintiff was the incumbent of a public office and a candidate for re-election. This rendered the occasion privileged, and it was the duty of the court to so declare, leaving it to the jury to determine whether the privilege was abused—that is to say, whether it was used in bad faith and with malice. These propositions are familiar and perfectly well settled.

That the court was also right, however, in adding the amendment to the instruction is settled in Virginia by the case of *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, and by the weight of authority outside of this State.    ✓

In a copious and valuable note to *Black* v. *State Co.,* 93 S. C. 467, 77 S. E. 51, Ann. Cases, 1914-C, p. 997, the annotator says: "The weight of authority seems to favor what may be considered as the narrow view, which is to the effect that while fair criticism and comment on the merits and demerits of candidates for office are privileged if made in good faith, false statements of facts are not privileged," citing a number of cases from many States, including Illinois, Massachusetts, New York, Ohio, Virginia and West Virginia.

In *Sweeney* v. *Baker,* 13 W. Va. 158, 31 Am. Rep. 757, Green, President, in concluding an exhaustive consideration and discussion of the question at issue, said: "The fact that one is a candidate for an office in the gift of the people, affords in many instances a legal excuse for publishing language concerning him as such candidate, for which publication there would be no legal excuse, if he did not occupy the position of such candidate, whether the publication be made by the proprietors of a newspaper, or by a voter, or other person having an interest in the election. The conduct and actions of such candidate may be freely commented upon; his acts may be canvassed, and his conduct boldly censured. Nor is it material that such criticism of conduct should in the estimate of the jury be just. The right to criticize the action or conduct of the candidate is a right. on the part of the party making the publication, to judge himself of the justness of the criticism. If he was liable for damages in an action for libel for a publication criticizing the conduct or action of such a candidate, if a jury should hold his criticism to be unjust, his right of criticism would be a delusion,

a mere trap. The only limitation to the right of criticism of the acts or conduct of a candidate for an office in the gift of the people is, that the criticism be *bona fide.* As this right of criticism is confined to the acts or conduct of such candidate, whenever the facts which constitute the act or conduct criticized are not admitted, they must of course be proven. But as respects his person there is no such large privilege of criticism, though he be a candidate for such office. This large privilege of criticism is confined to his acts. The publication of defamatory language, affecting his moral character, can never be justified on the ground that it was published as a criticism. His talents and qualification mentally and physically for the office he asks at the hands of the people, may be freely commented on in publication in a newspaper, and though such comments be harsh and unjust no malice will be implied; for these are matters of opinion, of which the voters are the only judges; but no one has a right by a publication to impute to such a candidate falsely crimes, or publish allegations affecting his character falsely."

In *Williams Printing Co.* v. *Saunders, supra,* Keith, President, after pointing out that the privilege with which he was dealing in that case, and with which we are dealing in the instant case, is known as a qualified privilege, said: "Publications of the truth regarding the character of a public officer and relating to his qualifications for such office, made with intent to inform the people, are not libelous, but the publication of falsity and calumny against public officers and candidates for public offices is a very high offense. *Commonwealth* v. *Clap,* 4 Mass. 163, 3 Am. Dec. 212. * * *

"Speaking on this subject, Mr. Cooley says: 'A candidate for public office does not surrender his private character to the public, and he has the same remedy for defamation as before; and the publication of false and defamatory statements concerning him, whether relating to his private character or public acts, is not privileged * * * '

"The law is, as we have seen, that it is for the court to say whether or not the occasion is a privileged one, and, if it be one of privilege, whether a qualified or an absolute privilege, and by its instructions to guide the jury to a right conclusion. As the privilege with respect to the criticism of public officers, or candidates for public office, does not extend to the imputation of moral delinquency with reference to their private character, such imputations are libelous, and the party making them may be held liable therefor in a suit for slander, unless he can prove the charges to be true. In such case it is not sufficient to prove that the party publishing had good reason to believe and did believe them to be true, as a publication of this character is not even conditionally privileged. From the publication of such libelous charges the law implies malice, as well as damages to the plaintiff; and the jury may, therefore, on proof of the publication only, render a verdict for substantial damages. *Sweeney* v. *Baker,* 13 W. Va. 158, 31 Am. Rep. 757. And just here we will state that this case is one of unusual authority. It was an action for libel upon a man who was a candidate for the House of Delegates of West Virginia. The opinion was delivered by a judge of great distinction, and is a mine of learning and sound reasoning. It cites all of the Virginia cases upon the subject prior to the creation of the State of West Virginia, such cases being as binding authority in the new State as in the old. The case, therefore, may be accepted without hesitation as one of the highest authority."

There can be no doubt that the language alleged to have been used by the defendant went beyond the realm around which the law, as recognized in this State, has thrown the protection of privilege, and constituted charges of moral turpitude and criminal dishonesty. There being no plea of justification, the charges were conclusively presumed to be false, and the trial court properly so instructed the jury.

*Williams Printing Co.* v. *Saunders, supra.* The failure to plead the truth of the words cut off any inquiry into that question. The only questions for the jury, therefore, were whether the defendant actually used the words, and, if so, what damage he should pay. These questions were submitted to the jury upon proper instructions and their verdict against the defendant must end the case.

In this connection it may be stated that one of the objections of the defendant to the instruction above mentioned was, that the amendment thereto improperly invaded the province of the jury by assuming that the defendant did, in fact, use the words ascribed to him. This objection is without merit. It is manifest, upon a reading of the instruction as a whole, that the court intended to leave to the jury the question whether the defendant spoke the words, or any of them, as charged in the declaration, and they could not have failed to understand this intention on the part of the court.

In answer to the contention that the case at bar is controlled by the decision of this court in *Gatewood* v. *Garrett,* 106 Va. 552, 56 S. E. 335, it is only necessary to say, that the distinction made by Judge Keith between that case and the case of *Williams Printing Co.* v. *Saunders,* prevails here. In the latter case Judge Keith said: "Instruction No. 3, it is claimed, is also supported by the opinion in *Gatewood* v. *Garrett, supra,* and we accept as law the instruction as it appears in *Gatewood* v. *Garrett.* It declares that the conduct of candidates for public office is open to public criticism, and it is for the interest of society that their acts may be fully published with fitting comments or strictures; but one of the differentiating features between the case before us and *Gatewood* v. *Garrett* is that, while the comments and strictures in that case were fitting—that is to say, suitable and proper to the occasion—those set out in the declaration in this case transcend the bounds of propriety prescribed by

law, are in excess of the right and duty of a citizen to make complaint of any misconduct or act showing lack of qualification or fitness for office of a candidate, and attribute moral turpitude to the defendant in error."

There were other assignments of error, but the conclusions already expressed are decisive of the case. The judgment must be affirmed.

*Affirmed.*