# Richmond

## R. A. JAMES, JR. v. C. H. HAYMES.

March 16, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Harris, Harvey & Brown,* for the plaintiff in error.

*N. E. Clement, H. T. Clement* and *C. R. Warren,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action for libel brought by the plaintiff against R. A. James, Jr., owner and publisher of The Danville Register, a daily newspaper published in Danville, Virginia. The trial resulted in a verdict and judgment for the plaintiff in the sum of $4,500. This writ of error brings under review that judgment and the incidents of the trial.

The notice of motion, as finally amended, contains a count of libel at common law and a count of insulting words under the statute (section 5781).

The defendant filed a demurrer to each count, on completion of the evidence made motion to strike, and when the jury returned a verdict moved the court to set it aside, on the ground that the publication was not libelous, nor would

it support an action under the statute of insulting words. The demurrer and motions were overruled. These rulings were made the basis of separate exceptions, but all involved the same point and will be considered together.

The notice of motion alleged that the plaintiff, C. H. Haymes, an experienced contractor, in 1929 was awarded a contract by the State Highway Commission to rebuild a hard surface road extending from the outskirts of Chatham to Bannister river, a part of route 14 and one of the main highways leading through Chatham to Danville; that this work was completed on or about the 30th day of April, 1930; that on February 11, 1930, Haymes was awarded another contract to rebuild a part of the same highway, but much nearer Danville; that about the same dates the Laramore Construction Company was awarded two contracts to rebuild parts of the same highway, beginning at the points where the Haymes construction stopped, and that on Sunday, June 15, 1930, while both companies were at work upon the last-named projects, the following false, defamatory statement appeared as an editorial in The Danville Register.

### "SLOW WORK ON THE CHATHAM ROAD.

"The contractor on the Chatham road is doing such slow work that it seems hardly possible that he can complete the job in time to have the road ready for the tobacco season. The Chatham road was closed last year on account of the slow work of Contractor Haynes (Haymes) and it seems very unfair to the farmers who use the road and Danville business which loses when it is closed, that the same contractor should be allowed to impede the business of a whole community far more than is necessary, for two successive years.

"If, as it appears, the work on the Chatham road cannot be completed by the opening of the tobacco season, the thing to be done, it seems to the Register, is to make the best of a bad situation. This newspaper appeals to the

Highway Commission to instruct the contractor to begin work only on sections of the road around which a short and convenient detour may be arranged, so that there will be as little interference as possible with the business of the community because of the dilatory tactics of a road contractor.

"The Register frankly does not understand why the contractor on the Chatham road has been permitted such an unreasonable length of time to complete the job on one of the most important State highways, a delay that has thoroughly tried the patience of citizens of Pittsylvania county and Danville. Sometimes the Highway Commission lets contracts on a long time basis in order to get the work done cheaper, but this was certainly not the case with the bidder on the Chatham road. Of course the contractor can do the job cheaper on this basis, and that is why the State has district engineers to supervise road construction, to see that the work is done according to specifications and as quickly as possible. On the Chatham road the contractor seems to be doing the job in his own time at least."

The defendant filed two pleas—one a plea of justification; the other a special plea alleging that the statement of facts in the editorial was made in good faith, believing the same to be true, without malice or ill-will, and that it was a fair and honest comment on a matter of public concern, and that the publication of the same was privileged.

It appeared that while the C. H. Haymes and Laramore construction companies were building the road under the contracts awarded them in the year 1929, the Highway Commission caused a temporary road to be built for the purpose of detouring traffic around that part of the highway which was under construction by these companies; that this temporary detour was at times exceedingly bad, especially in wet weather, and caused the people using it considerable inconvenience and created much dissatisfaction. Haymes, under the terms of his 1929 contract, was obligated to complete his project by November 1, 1929, but as a matter of fact, traffic was not allowed over this part of the road until

January 6, 1930. Haymes testified that he was not responsible for the delay in completing the work by November 1st, but that it was due to weather conditions and orders of the Highway Commission, and while it had charged him with ten dollars a day for forty-one days' delay, a controversy was then pending before the Highway Commission as to whether or not he was responsible for any of the delay, and that in any event, when Laramore completed his work Haymes turned traffic over that part of the highway which he was constructing, and he was not solely responsible for more than eight days' detouring of traffic.

Haymes further testified that at no time after he was permitted by the Highway Commission to begin work on the 1930 project was he behind in his schedule. It was conceded that while construction on plaintiff's project was not completed until September 13th, the road was opened to traffic on September 2, 1930. Indeed, on June 25, 1930, the following article appeared in The Danville Register:

"Chatham Road to Be Open in Sept.

"Work Will Be Completed in Time for Opening of Local Tobacco Mart.

"Because of the fear which has been prevalent among tobacco growers of Pittsylvania county that the work on the Chatham highway would not be completed in time for the opening of the Danville tobacco market, Senator W. A. Garrett and Delegate Maitland Bustard recently called upon H. G. Shirley, State Highway Commissioner in Richmond to discuss the situation and prevail upon the Commission to rush the work to completion.

"They were promised every co-operation in speeding the work. An engineer of the Highway Department was sent to make a check on the progress being made. It was found that the Haynes (Haymes) Construction Company, which is doing the work was up to schedule, and that the road will

be finished by September 1st, a month before the opening of the Danville market is scheduled."

■ There is no question of the fact that plaintiff was paid with public funds for the construction of a public highway, which is a matter of public concern, and hence the work upon which he was engaged was a subject of fair and honest comment or criticism by newspapers, as well as any other citizen.

■ There are a few decisions which hold that a publication, even though false, concerning a matter of public interest, such as a misstatement of facts concerning a public officer or a candidate for office, made in good faith, from proper motive, and with reasonable ground for belief in its truth, is a good defense. Perhaps the leading case so holding is *Coleman* v. *MacLennan,* 78 Kan. 711, 98 Pac. 281, 20 L. R. A. (N. S.) 361, 130 Am. St. Rep. 390. However, the majority of cases hold that if the facts upon which the comment or criticism sought to be excused do not exist, the foundation fails. *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, 477, Ann Cas. 1913E, 693; *Post Pub. Co.* v. *Hallam* (C. C. A.) 59 Fed. 530; *Burt* v. *Advertiser Newspaper Co.,* 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97. See, also, 17 R. C. L. 354, and 36 C. J. 1238.

Defendant contends that the editorial in question is not a comment or criticism upon plaintiff's fitness to prosecute his trade or calling as a contractor, but merely states that upon this particular piece of work he was slow, and in support of this contention cites a number of cases which hold that fair and honest comment or criticism upon public work or other matters of public interest is not libelous, however strong the terms may be, without the averment and proof of special damages. Among the cases cited is that of *Bearce* v. *Bass,* 88 Me. 521, 34 Atl. 411, 51 Am. St. Rep. 446. In that case the workmanship and the material used in erecting a public building were severely criticized, but no allusion was made to the contractors and no attack was made upon them, as such. Furthermore, the statements concern-

ing the condition of the building and the material were proven to be true. It was correctly held that the publication was not libelous; but decisions falling in that group furnish no aid in determining the question here presented because the editorial in question contains no allusion to the workmanship or the material used in the construction of the road.

The facts here reveal that two separate and independent contractors, one living in Danville and the other in Chatham, were engaged in the construction of parts of the same highway, the project undertaken by one contractor beginning where that undertaken by the other stopped. Neither completed the respective parts of the highway by the time named in the separate contracts; each claimed that the failure to complete the work within the time specified was not due to any dereliction by him. From one contractor the Highway Commission exacted no penalty for the delay. Whether or not the other would be required to pay a penalty was still undetermined at the time of the trial. In 1930 both contractors undertook the construction of other sections of the same highway, both were at work upon their respective projects at the time of the publication. The editorial singled out the contractor living in Chatham, alluded to him by name, and, according to plaintiff's evidence, falsely stated that he was then doing slow work, that the road in 1930 was closed because of his slow work, that as a road contractor he employed dilatory tactics, and the implication was that he was doing this for the purpose of securing greater profit than he was legally entitled to.

█ "Every wilful and unauthorized imputation, spoken, written, or printed, which imputes to a merchant, manufacturer, or other business man, conduct which is injurious to his character and standing as a merchant, manufacturer, or business man is libelous or slanderous as the case may be. But to be actionable without proof of special damages the words must contain an imputation such as is necessarily

hurtful in its effect upon plaintiff's business and must touch him in his special trade or occupation." 36 C. J. 1188.

In *Vaughan* v. *Lytton*, 126 Va. 671, 101 S. E. 865, it was held that where there is room to doubt whether the language used is out of proportion to the occasion, or where there is extrinsic evidence of malice, the jury must be permitted to pass upon the question. That case involved a letter written upon a privileged occasion and the question was whether or not the defendant had abused the privilege of the occasion.

The present case, strictly speaking, does not involve a privileged occasion. That term, in a legal sense, is used with reference to a case in which one or more members of the public are clothed with greater immunity than the rest. Here we are dealing with a common right of every citizen to comment upon or criticize a matter of public concern. The question is whether or not the editorial exceeded the limits of fair and honest comment. By analogy, the same rule which is applied in a case involving a qualified privileged occasion should apply here, *i. e.*, that where the court entertains doubt as to whether the comment in question exceeded the limits of fair and honest criticism the matter should be left to the determination of a jury. We are, therefore, of opinion that there was no error in the action of the court in overruling the demurrer and refusing to strike the evidence or to set aside the verdict of the jury, on the ground that it was contrary to the evidence.

The fifth assignment of error is to the action of the court in permitting plaintiff, over the objection of defendant, to testify that after publication of the editorial in question he made the lowest bid, by some four thousand dollars, on a project in Orange, Virginia, and the contract was not awarded to him, due, in his opinion, to the defamatory publication.

A party guilty of slander or libel is responsible for the natural and probable consequences of the wrong, as any other tort-feasor. Where the defamation is one

affecting plaintiff's business, from which the law presumes general damages, evidence of general diminution or loss of business is usually admissible. *Williams Printing Co.* v. *Saunders, supra.* The loss of a particular customer is regarded as a ground of special damages, and must be specifically alleged and the customer's name stated. Newell on Slander and Libel (4th ed.) 844. There was no such allegation in this case. The town of Orange is more than 150 miles from Danville and there is no evidence tending to prove that The Danville Register was circulated therein, or that the parties in Orange who advertised for bids had any knowledge of the editorial. If plaintiff desired to include the loss of this contract as an element of damage, it was his duty not only to allege such loss but to prove it by the parties themselves. If this loss was due to defendant's wrong-doing it was capable of definite proof. The testimony of plaintiff on the point was a mere guess and its admission was clearly erroneous.

The action of the court in giving instructions on punitive damages was raised both in the exceptions to certain instructions and on the motion to set aside the verdict. This question was considered and settled in *Windsor* v. *Carlton,* 136 Va. 652, 118 S. E. 222, 223, where Judge Kelly, in the course of his opinion, said:

"* * * there is a sense in which every finding for the plaintiff in such an action amounts to a finding that there was malice in the use of the words, but it is not true, and will hardly be contended, that punitive damages may be found in every action for defamation. The right to recover punitive damages depends upon proof of actual or express malice. Implied malice or malice in law will suffice to support the action, and will entitle the plaintiff to compensatory damages, but will not, in the absence of proof of actual or express malice, warrant the infliction of punishment by way of exemplary damages. * * *

"The true rule, as we think, and the rule supported by the weight of authority elsewhere, is that malice, either

express or implied, is essential to a recovery in every case, but that actual or express malice need not be proved except as a basis for punitive damages. For the latter purpose it is indispensable. 25 Cyc. 374; *Id.,* 536 *et seq.;* 18 Am. & Eng. Ency. L. (2d ed.) 1002; *Id.,* 1093; *Harman* v. *Cundiff,* 82 Va. 239, 246; *Ramsay* v. *Harrison,* 119 Va. 682, 686 (instruction 7), 702, 89 S. E. 977."

In the case under consideration, it was proven that neither the writer of the editorial, who was an employee of the owner, nor the owner of the newspaper knew plaintiff or had had any dealing with him prior to publication of the article. It is a matter of common knowledge that Danville is the largest tobacco market in Virginia, that tobacco is the principal money crop of a great majority of the farmers in Pittsylvania county, and that the market usually opens about the first of October and remains open about five months. If within that period the farmers are unable to use, or are seriously impeded in the use of, the highway, there is great danger of financial loss to the business interests of Danville, as well as to the farmers themselves.

The editorial, therefore, was discussing a matter of vital interest to that section of the State. If the evidence for plaintiff is true then the falsity of the facts upon which the editorial is based and the implication therein of improper motive controlling plaintiff remove the privilege of the publication and render defendant liable for compensatory damages. But before a plaintiff has a right to have the jury instructed on the question of punitive damages he must introduce some proof of actual or express malice or at least proof of such recklessness or carelessness on the part of defendant as is equivalent to an actual intent to violate his rights.

There is no evidence here of actual or express malice. The circumstances under which the editorial was published and its tone and tenor do not establish that degree of recklessness and carelessness on the part of defendant which en-

titles plaintiff to have the question of punitive damages submitted to the jury. Plaintiff's instructions Nos. 5, 6, 8 and 14 and defendant's instructions Nos. 4 and 7 are in conflict with the views herein expressed and should not have been given in the form presented.

From the opinion of the trial judge and the statement of counsel made at the bar of this court, it appears that objection here urged to plaintiff's instruction No. 3 was not made at the time it was presented, but it was agreed between counsel, without the consent of the court, that any ground of objection to the instructions, whether raised at the time the judge ruled thereon or not, might be incorporated in a bill of exception and made a part of the record. This is in conflict with the provisions of Rule XXII, adopted primarily for the benefit of trial courts, the purpose of which is to require the ground of objection to be stated with reasonable certainty before the question is decided.

The procedure followed in this instance is unfair to trial courts. The grounds of objection to instructions which are not stated before the instructions are granted will not be considered by this court, unless they come within the terms of the exception stated in the rule, or unless the trial judge himself waives the application of the rule. This eliminates from our consideration the objection to instruction No. 3.

The questions raised by the other assignments of error are of no special interest, and it is very improbable that any of them will arise in another trial of this case. Hence, it is deemed unnecessary to prolong this opinion by discussing them.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with the views herein expressed.

*Reversed.*