# Richmond

## John E. Alvey, Trading as J and J Garage v. Steve Butchkavitz.

November 22, 1954.

Record No. 4269.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Frank P. Moncure, Thomas M. Moncure* and *T. Brooke Howard,* for the plaintiff in error.

*Bedford B. Uhler, Jr.* and *W. Hill Brown, Jr.,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Steve Butchkavitz obtained a verdict in the sum of $6,500 against Gene Florence and John E. Alvey, the latter trading as J and J Garage. The motion of the defendants to set aside the verdict was overruled and judgment was entered thereon. Florence elected to abide by the judgment, and upon Alvey's petition we granted him a writ of error.

We are met at the threshold of the proceeding with the renewal of a prior motion to dismiss the writ of error as having been improvidently awarded on the ground previously asserted, that appellant failed to designate the parts of the record to be printed in compliance with Rule 5:1, § 6. In ruling on that motion we held that the rule had been complied with as parts of the record had been designated for printing within the time prescribed. We adhere to that ruling.

The motion for judgment alleged that the plaintiff suffered the injuries complained of as the result of being negligently shot by defendant Florence who at the time was

acting as the agent and servant of the defendant Alvey, within the scope of his employment.

The answer denied that Florence shot the plaintiff, and also denied that he was the agent, servant or employee of Alvey at the time of the shooting. The answer affirmatively alleged that the plaintiff shot himself and that his injuries, if any, were caused by his own negligence. These are the issues on which the case was tried in the lower court.

The evidence was not transcribed but is before us in an agreed stipulation. The testimony of the plaintiff Butchkavitz was to the effect that he and a companion were returning from Florida with a truckload of produce, bound for Scranton, Pennsylvania; that when they approached Woodbridge, Virginia, the truck encountered mechanical difficulty; that a wrecker belonging to Alvey was summoned and the truck hauled to Alvey's place of business; that Alvey did not have the parts necessary to repair the truck and he and plaintiff's companion drove to Washington to obtain them; that plaintiff remained at the garage which was in charge of defendant Florence. Plaintiff further testified that at approximately 9 a. m., while he was waiting the return of Alvey and his companion "Florence walked behind the counter in the vicinity of the cash register which was on the counter, emerged with a pistol in hand, walked to the rear of the room, still carrying the pistol in hand, and obtained a wire and a rag for the apparent purpose of cleaning the pistol." He further stated that Florence offered to sell him the weapon but that he refused the offer and gave as his reason that he was afraid of pistols and requested Florence to put the pistol away. Plaintiff testified that Florence then entered the doorway of an adjoining room, that while he was sitting in a chair near the front door, he "immediately heard a report, felt a pain in his leg, and discovered that he had been shot".

Butchkavitz further testified that when Florence discovered "that he had shot the plaintiff", he drove him to the home of a physician where he was treated and given prescriptions

for drugs; that Florence obtained the drugs for him at a drugstore, and after they returned to the garage Florence took $10 from the cash register and gave it to him "to help him defray his medical expenses."

Butchkavitz further stated that when Alvey and his companion returned Alvey remarked, "I don't know what he was doing with it (the pistol) in the place. If anyone wants to steal anything they can have it." Butchkavitz said that he and Florence were alone when the shot was fired and that no one else was in the garage while Alvey and his companion were away except for a brief period when the deliveryman brought the morning newspapers which Florence paid for with money from the cash register.

Gene Florence testified that he was employed by Alvey to keep the filling station, which operated on a 24-hour basis; that the time of his employment was from midnight to 8 a. m.; that his duties were servicing the automobile trade, selling tobacco, candies, papers, etc. He stated that he was relieved of duty by George Humphries at 8 a. m. on the morning in question; that he remained at the station reading the morning paper and was awaiting a ride to his home when the shot was fired; that Humphries did not come into the room where he and the plaintiff were but remained in the garage portion of the building. He stated that plaintiff had brought with him to the garage a small overnight bag, and that about 8:30 a. m. plaintiff produced a pistol from the bag and offered to sell it to him; that plaintiff was sitting with his legs crossed and was twirling the pistol on the finger of his right hand "like the cowboys do" when it discharged and inflicted the injuries complained of to his right knee; that after the shooting the plaintiff placed the pistol back in the overnight bag; that he took the plaintiff to the doctor and that plaintiff told the doctor that he had shot himself.

Florence denied that he gave plaintiff $10 and he also denied that he was in the employ of Alvey when the shooting occurred. He stated that no one was in the service sta-

tion at the time of the shooting but that he heard Humphries "or someone else" in the garage portion of the building. On cross examination Florence admitted that he paid for the papers out of the cash register.

Dr. Phillips, the physician who treated Butchkavitz, was not called as a witness.

Alvey testified that he owned and operated the garage and kept it open on a 24-hour basis; that he employed Florence as his "night man" to keep the station open during the hours from midnight to 8 a. m.; that George Humphries was scheduled to relieve Florence at that time; that when he returned to the garage from Washington at 10 a. m. the plaintiff told him he had shot himself and made no claim that Florence had shot him; that he kept no pistol in the garage but admitted that he kept a shotgun there. He also stated that he later received a bill from the plaintiff representing medical and hospital expenses which he ignored. Alvey testified on cross examination that if Humphries was not there to relieve Florence at 8 a. m., Florence would be expected to continue on duty.

Humphries testified that he was employed by Alvey at the time of the shooting and that he had actually reported for duty at 8 a. m. and was in the garage room servicing a car when the pistol shot was heard; that Florence said that the plaintiff had shot himself, and that plaintiff was holding the pistol.

Richard Duval, another witness, testified that he talked to the plaintiff and that plaintiff told him he shot himself. Duval admitted on cross examination that he was an uncle of Florence's.

It will be noted that as between the plaintiff and Florence there was only one issue for decision, *i.e.*, whether the plaintiff's wound was self-inflicted or caused by the actionable negligence of Florence. The weight and sufficiency of the evidence in this regard was a jury question, and under proper instructions the jury resolved the issue in favor of the plaintiff. The jury was the sole judge of the credibility

of the witnesses and the weight to be given their testimony. *Carpenter* v. *Commonwealth*, 193 Va. 851, 858, 71 S. E. (2d) 377. Alvey does not now question the finding of the jury on this point.

Alvey insists, first, that the evidence was not sufficient for the jury to conclude that Florence was his agent at the time the shooting occurred; and second, that in any event there was not sufficient evidence to show that Florence was acting within the scope of his employment at the time the injury was inflicted.

As to Alvey's first contention, the evidence concerning the fact of agency was in conflict and a jury question was clearly presented. Alvey relied strongly upon the testimony of his employee, Humphries, who testified that he relieved Florence at 8 a. m. In his attempt to show this Humphries testified that he was in the garage portion of the establishment when he heard the shot and then went to the room in which Butchkavitz and Florence were stationed. According to his own admission, he had not seen Florence before this time. Florence testified that he had not seen Humphries before the shooting but that he had heard Humphries "or someone else" in the garage prior to that time. Butchkavitz testified that he and Florence were the only persons on the premises at the time of the shooting and that no one else had been there except the man who delivered the morning papers. He further testified that he had never seen Humphries until the day the case was tried. Alvey admitted that he left Florence in full charge when he and Butchkavitz's companion left for Washington, and that it was Florence's duty to remain in charge of the business until he was duly relieved by Humphries.

The court carefully instructed the jury on the issue thus presented. The jury was told that the burden was on Butchkavitz to prove that Florence was the agent of Alvey at the time the injury was inflicted, and that unless this burden was borne by a preponderance of the evidence they should find their verdict for Alvey. As aforesaid, the evi-

dence presented a question for the jury and it had the right to determine that Florence had not been relieved by Humphries and that the relationship of master and servant existed at the time. The trial judge, in his written opinion, said: "* * * (T)he jury was, in my opinion, clearly justified in concluding that Florence had not been relieved and that, in fact, Humphries was not present when the shooting occurred." The finding of the jury on this issue, bearing the approval of the trial judge, is binding on us. *Traylor* v. *Atlantic Greyhound Lines*, 166 Va. 295, 297, 184 S. E. 188.

In considering the second contention advanced by Alvey, that the evidence failed to show that Florence was acting within the scope of his employment, we find from the record that this question was scarcely considered by Alvey in the defense of the case. The court, however, without objection, properly instructed the jury as to the law on the subject. At the trial Alvey's defense was limited to two issues, *viz*: (1) Florence was not his agent at the time the injury was inflicted, and (2) the plaintiff's injuries were self-inflicted. The latter defense was more strongly relied upon.

The difficulties experienced in scope of employment cases usually arise in applying the generally accepted legal test to the factual situation in the particular case under consideration. In *Appalachian Power Co.* v. *Robertson*, 142 Va. 454, 456, 129 S. E. 224, we said: "While the law upon this question appears to be simple, there has always been very great difficulty in its application, and it has been frequently said that it is impossible to state it briefly and comprehensively so as to be clearly applicable to all cases, because of the ever-varying facts and circumstances of particular cases."

We have repeatedly held that where the relationship of master and servant has been established the burden is on the master to prove that the servant was not acting within the scope of his employment when he committed the act complained of, and that if the evidence leaves the question in doubt it becomes an issue to be determined by the jury.

*Crowell* v. *Duncan,* 145 Va. 489, 501, 134 S. E. 576, 50
A. L. R. 1425; *Bivens* v. *Manhattan For Hire Car Corp.,*
156 Va. 483, 491, 159 S. E. 395; *McNeill* v. *Spindler,* 191 Va.
685, 695, 62 S. E. (2d) 13, 18.

Thus we subscribe to the holding that if the deviation
from the master's business is slight on the one hand, or
marked and unusual on the other, the issue is for the court
to decide; whereas, if the facts in the particular case place
the question between these two extremes, the question be-
comes a factual issue for the jury. *Drake* v. *Norfolk Steam
Laundry Corp.,* 135 Va. 354, 363, 364, 116 S. E. 668; *Master
Auto Service Corp.* v. *Bowden,* 179 Va. 507, 511, 19 S. E.
(2d) 679, 680; *McNeill* v. *Spindler, supra,* (191 Va., at p.
695).

The jury has determined, as they could properly do
on the evidence in this case, first, that Florence shot Butch-
kavitz while Florence was negligently engaged in cleaning a
loaded pistol on the premises of Alvey; and second, that at
the time of the shooting Florence was the servant of Alvey.
The final question for determination therefore is, was the
jury justified in concluding that Florence was engaged in
the business of Alvey at the time of the shooting. The legal
presumption being that he was so engaged, in order for
Alvey to escape responsibility for Florence's acts the burden
was upon him to show the contrary.

Alvey contended that the evidence showed as a matter of
law that Florence was not acting within the scope of his
authority at the time of the injury, and therefore the court
should have decided this issue in his favor. On the other
hand, Butchkavitz asserted that Alvey had not met the bur-
den of disproving the *prima facie* presumption against him,
and that the question was properly submitted to the jury for
determination.

We conclude from the facts disclosed that the trial court
was correct in submitting the question to the jury.

The evidence clearly shows that Alvey was the proprietor
of this combination service station and garage, located in a

rural community, on one of the main traveled highways of the Commonwealth. He offered a day and night service to the public. Florence was his "night man"; he was on duty from midnight to 8 a. m. Florence's duty was to wait on the trade. Among other things, he serviced cars and sold soft drinks and confections. While on duty the establishment was entirely in his care and keeping. He was responsible for his master's money and other things of value. He had free access to the cash register. It is not unreasonable to assume that Alvey desired his property protected and that he furnished his "night man" with a means of protection. All manner of people travel the highways day and night, and Florence was on duty to serve night travelers. The pistol which inflicted the injury was at the service station, and in the absence of any explanation as to why it was there, the jury had a right to infer that it was kept there for the purpose of protection. If it was there for that purpose, in order for it to be effective, it would of necessity have to be cleaned and kept in good order.

The pistol was near the cash register, and a wire and cloth were immediately available for use in cleaning it. Alvey made no effort to explain these rather pointed circumstances, and the burden of explanation was his. He placed reliance upon his primary defense, that plaintiff shot himself, and this the jury did not believe.

In the absence of Alvey, Florence was manager and as such was in complete charge of the establishment. His status was of a higher order than a mere employee. The proof was sufficient for the jury reasonably to infer that Florence at the time of the injury was acting in the interest of Alvey, within the scope of his employment. 35 Am. Jur., Master and Servant, § 599, pp. 1038, 1039, 1040.

"* * * The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, * * * goes beyond the strict line of his duty and authority,

and inflicts an unjustifiable injury upon another." 35 Am. Jur., Master and Servant, § 544, p. 975; *Rounds* v. *Delaware etc. R. Co.*, 64 N. Y. 129, 21 Am. Rep. 597.

Reasonable inferences drawn from physical facts and circumstances surrounding a happening may be as strong as direct evidence. Such inferences amount to circumstantial evidence. Facts may be proven by circumstantial evidence as well as by direct proof. *N. & W. R. Co.* v. *Richmond Cedar Works*, 160 Va. 790, 800, 801, 170 S. E. 5; *C. & O. R. Co.* v. *Ware*, 122 Va. 246, 255, 95 S. E. 183.

In *Crowell* v. *Duncan, supra,* (145 Va., at p. 501) we said:

"Where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury." *McNeill* v. *Spindler, supra,* 191 Va., at p. 695.

Under the facts and circumstances here presented the jury was the proper tribunal to determine the issue. We are here concerned with the reasonableness of the inferences or conclusions drawn by the jury under the facts presented. It is solely the jury's function to weigh contradictory evidence. It is also its function to judge the credibility of the witnesses and under proper instructions to draw the ultimate conclusion as to the facts. The very essence of its duty is to select from conflicting facts and circumstances those which it considers more reasonable and to base its conclusion thereon. *Washington & G. R. Co.* v. *McDade*, 135 U. S. 554, 571, 572, 10 S. Ct. 1044, 1049, 34 L. ed. 235, 241, 242; *Bly* v. *Southern R. Co.*, 183 Va. 162, 175, 31 S. E. (2d) 564, 570, 172 A. L. R. 584.

The jury's finding, based upon proper evidence, whether relating to negligence, causation, relationship of the parties or any other factual matter, cannot be ignored. Courts are not free to disturb verdicts merely because the jury could have drawn different inferences or conclusions or because

the judge may feel that another result might have been more reasonable. *Tennant* v. *Peoria etc. R. Co.*, 321 U. S. 29, 64 S. Ct. 409, 412, 88 L. ed. 520.

Here the jury's verdict bears the approval of the trial judge and we see no reason to disturb it. The judgment is therefore

*Affirmed.*

EGGLESTON, J., dissenting.