# Staunton

ARTHUR P. SLAUGHTER v. VALLEYDALE PACKERS, INCORPORATED, OF BRISTOL.

September 4, 1956.

Record No. 4484.

Present, All the Justices.

The opinion states the case.

*H. E. Widener, H. E. Widener, Jr.* (*Widener & Widener, Warren & Warren,* on brief), for the plaintiff in error.

*Waldo G. Miles* (*Fred C. Parks, Jones, Woodward & Miles,* on brief), for the defendant in error.

SMITH, J., delivered the opinion of the court.

This is an action for insulting words and slander instituted by Arthur P. Slaughter, referred to herein as plaintiff, against Valleydale Packers, Incorporated, of Bristol, referred to herein as defendant. A jury trial resulted in a verdict and judgment for defendant, to which judgment we awarded plaintiff a writ of error.

The alleged defamatory statements were made by persons employed by the defendant and were to the effect that plaintiff had been selling for human consumption inedible meat from animals which had not been butchered; that plaintiff had been arrested by the F. B. I. and placed under bond of $20,000 or $30,000, and was awaiting trial for his fraudulent conduct.

Plaintiff contends that the trial court erred: (1) in not setting aside the verdict, entering judgment for him as to liability, and ordering a new trial on the issue of damages; (2) in granting and refusing certain instructions, and (3) in admitting certain evidence.

[■ Defendant admits that the alleged defamatory statements were "false, insulting, slanderous and actionable *per se,*" and that plaintiff was damaged thereby. The only defense asserted by defendant is that it is not liable to plaintiff because the defamatory statements of its employees were not made in the ordinary course and scope of their employment.

Plaintiff is a business man of admittedly good reputation and at the time the defamatory statements were made he was engaged in the business of buying and selling cured hog meat, hides and grease in and around Bristol. He did not sell any fresh meat and did no butchering. He had, however, until about six months before the defamatory statements were made, operated a rendering plant at which he produced and sold hides, grease and tankage or meat meal which is made from the inedible parts of animals and is used as feed for certain domestic animals.

Defendant is a wholly owned subsidiary of Valleydale Packers of Salem, a closely owned Virginia corporation. Defendant produces and sells meat products, fresh meats, smoked and cured meats, and as by-products, hides, grease, tallow and tankage. Of its total sales only about twelve percent are made in and around Bristol.

On September 3, 1953, J. L. Rogers, who was plant manager, secretary and treasurer, as well as a director and stockholder, of the defendant, went to the livestock market at Abingdon to buy heifers and cows for defendant. While waiting around the market for the sale to begin, Rogers sat down beside Ballard B. Huff, a cattle dealer, and related to him the defamatory story concerning plaintiff. When Huff said he did not believe plaintiff would do anything like that, Rogers said he did not believe it either and got up and went about 30 feet to where Earl W. Sell, also a cattle dealer, was sitting and sat down beside him and told him substantially the same story. Sell said he did not believe the story and Rogers replied, "I don't believe it either. I think Mr. Slaughter ought to know." Shortly thereafter Rogers got up and left.

In describing his duties and the "general managerial set-up" of defendant's business, Rogers testified that he was "over the whole plant" of about 130 employees, including the sales manager, production superintendent and cattle buyers. He further testified that he first heard the defamatory story from one of defendant's salesmen in the latter part of August 1953; and he also stated that he thought plaintiff was still operating his rendering plant on September 3, 1953, the date of his conversations with Huff and Sell.

Both Huff and Sell testified that they first heard the report about plaintiff from Rogers. But Sell stated that within two or three days thereafter he heard the story from meat dealers in Johnson City and Kingsport, and Huff testified that when he returned to the livestock

market at Abingdon the next week, the rumor was widespread and was being generally discussed by the crowd at the market.

The motion for judgment alleged and the evidence shows that in addition to Rogers three other persons in the employ of defendant uttered during their working hours the slanderous and insulting story concerning plaintiff. These employees were Charles Wood and Charles Jessee, salesmen, and Sam A. Wagner, foreman in the defendant's inedible meat department.

Wood related the story to two of his customers, after he had received orders from them for defendant's meat products, but before leaving their presence. On one occasion two persons other than the customer were present and when one of them said he did not believe the story Wood offered to bet him $20 that it was true, or as he testified, "that I was truthfully telling the rumors I heard."

Jessee testified that he related the rumor to one of his customers, after receiving an order from him but before leaving the customer's store.

Wagner told the defamatory story to Charlie Burnette, a farmer and trucker, while Wagner was checking and Burnette was loading 150 bags of tankage on his truck at defendant's plant in Bristol.

A motion by defendant to strike the evidence was overruled, to which ruling defendant has not assigned cross error. Thereafter, plaintiff offered and the court granted, without objection by defendant, Instruction No. 1, which therefore became the law of the case. That instruction reads as follows:

"The court instructs the jury that the employer, Valleydale Packers Incorporated of Bristol in this case is liable for the wrongful acts, if any, of its employees, Rogers, Wood, Wagner, and Jessee, while they are acting in the ordinary course of their employer's business and within the scope of their employment. And so if you believe from the preponderance of the evidence that Rogers, Wood, Wagner and Jessee, or any one or more of them, while acting in the scope of their employment and in furtherance of the defendant's business maliciously and falsely spoke of and concerning the plaintiff substantially the words sued upon, and if you believe from the evidence that such words from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace, then they are actionable; that is to say the plaintiff, Arthur P. Slaughter has the right to sue the defendant, Valleydale Packers Incorporated of Bristol therefor and to recover such damages

as the jury may think proper under all the circumstances of the case, the amount of such damages to be determined upon the principles laid down in the other instructions herein, but not to exceed $100,000.00, the amount claimed by plaintiff in his action."

In *Davis* v. *Merrill*, 133 Va. 69, 77, 112 S. E. 628, this court quoted with approval from 2 Mechem on Agency (2nd ed.), § 1960, the following definition of "scope of employment":

" 'In many cases, no better definition can be given than the words themselves suggest. But, in general terms, it may be said that an act is within the scope of the employment if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, *or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business*, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' " (Italics supplied). *Cary* v. *Hotel Rueger, Inc.*, 195 Va. 980, 81 S. E. 2d 421; *Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 49 S. E. 2d 363.

In the recent case of *Alvey* v. *Butchkavitz*, 196 Va. 447, 453, 84 S. E. 2d 535, we said: "The difficulties experienced in scope of employment cases usually arise in applying the generally accepted legal test to the factual situation in the particular case under consideration. In *Appalachian Power Co.* v. *Robertson*, 142 Va. 454, 456, 129 S. E. 224, we said: 'While the law upon this question appears to be simple, there has always been very great difficulty in its application, and it has been frequently said that it is impossible to state it briefly and comprehensively so as to be clearly applicable to all cases, because of the ever-varying facts and circumstances of particular cases.'

"We have repeatedly held that where the relationship of master and servant has been established the burden is on the master to prove that the servant was not acting within the scope of his employment when he committed the act complained of, and that if the evidence leaves the question in doubt it becomes an issue to be determined by the jury. [Citing cases].

"Thus we subscribe to the holding that if the deviation from the master's business is slight on the one hand, or marked and unusual on the other, the issue is for the court to decide; whereas, if the facts in

the particular case place the question between these two extremes, the question becomes a factual issue for the jury." (Citing cases).

In *Crowell* v. *Duncan*, 145 Va. 489, 501, 134 S. E. 576, 50 A. L. R. 1425, this court said:

"Where it is doubtful whether a servant in injuring a third person was acting within the scope of his authority, the doubt will be resolved against the master because he set the servant in motion, at least to the extent of requiring the question to be submitted to the jury." *Alvey* v. *Butchkavitz, supra; McNeill* v. *Spindler*, 191 Va. 685, 62 S. E. 2d 13.

In the light of these rules of law and Instruction No. 1, we hold that under the facts and circumstances of the instant case the trial court did not err in submitting the "scope of employment" issue to the jury. And since the jury has resolved this issue in favor of defendant, the judgment must be affirmed provided there is no merit in the plaintiff's remaining assignments of error.

The other principal errors assigned by plaintiff are to the granting, over his objection, of Instructions A-2, B and D. Instruction A-2 reads as follows:

"The court instructs the jury that the fact that J. L. Rogers was General Manager, Secretary-Treasurer, a director and a stockholder in Valleydale Packers did not in itself vest in him any authority from his company to repeat or make any slanderous or insulting statement concerning plaintiff.

"In order for the defendant to be liable for a statement made by J. L. Rogers, the defendant must have expressly authorized such statement or authority to make the statement can be fairly implied from the nature of his employment and the duties incident to it. Rogers must have been acting as the defendant's employee *at the time and in respect to the very transaction out of which the plaintiff's injury arose.*" (Italics supplied).

Plaintiff attacks this instruction on the grounds that: (1) "under the circumstances of this case the fact that J. L. Rogers held the various official positions named by him was sufficient of itself to preclude the defendant from denying his authority or denying that he was acting in the scope of defendant's business," and (2) the definition or test of "scope of employment" contained in the concluding sentence of the second paragraph was erroneous and tended to mislead and confuse the jury.

The substance of plaintiff's first objection to the instruction is that

defendant was liable as a matter of law and therefore the court erred in submitting the question of defendant's liability to the jury. There is no merit in this contention because under Instruction 1, *supra*, which was requested by plaintiff and which became the law of the case, the jury was told that the defendant "in this case is liable for the wrongful acts, if any, of its employees, Rogers, Wood, Wagner, and Jessee, while they are acting in the ordinary course of their employer's business and within the scope of their employment." Since the question of liability was submitted to the jury at the plaintiff's request, he can not now successfully complain that the identical question was contained in the instruction requested by defendant.

■ However, plaintiff's second objection to Instruction A-2 is well taken. Although the italicized language of that instruction was based on certain language found in an opinion of this court describing the doctrine of *respondeat superior*,[1] "we have frequently said, language appropriate in an opinion is not always appropriate in an instruction." *Smith* v. *Commonwealth*, 192 Va. 186, 190, 64 S. E. 2d 761. See also, *Snyder* v. *Fatherly*, 158 Va. 335, 353, 163 S. E. 358. The sole issue before the jury in determining the vital question of defendant's liability was whether the defamatory statements of defendant's four employees, or any of them, were made in the scope of their employment; but under the facts and circumstances of this case the meaning of that term should have been broadened to include the element underscored in the quotation from *Davis* v. *Merrill*, *supra*.

■ Instruction B, objected to by plaintiff, told the jury that "if you believe from the evidence that it is *just as probable* that an alleged publication concerning the plaintiff was made by an employee of the defendant not by virtue of his employment and not in furtherance of the defendant's business as that it was made by virtue of his employment and in furtherance of the defendant's business, your verdict shall be for the defendant." (Italics supplied).

Plaintiff contends that the "just as probable" comparison of the evidence has no place in determining the question of scope of employment, and that the instruction should have told the jury that the

---

[1] In *Barnes* v. *Hampton*, 149 Va. 740, 744, 141 S. E. 836, we said:

"The doctrine of respondeat superior applies only where the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the *time and in respect to the very transaction out of which the injury arose*." This language was quoted with approval in *Manuel* v. *Cassada*, 190 Va. 906, 913, 59 S. E. 2d 47.

defendant had the burden of proving that its employees were not acting within the scope of their employment. In support of his contention, plaintiff cites and relies on *Alvey* v. *Butchkavitz, supra; Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576. Even though the plaintiff may have been entitled to an instruction stating that defendant, under certain circumstances, had the burden of rebutting the presumption that its employees were acting within the scope of their employment, he offered no such instruction. But on the other hand, under Instruction No. 1, requested by plaintiff the jury was told that it should find defendant liable if it believed from a "preponderance of the evidence" that defendant's employees were acting within the scope of their employment. Hence, the "just as probable" comparison of the evidence in Instruction B was nothing more than an explanation of "preponderance of the evidence" contained in Instruction No. 1. Therefore, under the law of the case, the court did not err in granting Instruction B.

■ Plaintiff next complains of the granting of Instruction D, which reads as follows: "The court instructs the jury that under the Court's instructions if they believe from a preponderance of the evidence that the defendant is liable to the plaintiff they *may not award the plaintiff any damages for direct loss of money, property, customers or business since no such losses have been* claimed or proven." (Italics supplied).

Plaintiff contends that this instruction was an erroneous attempt to exclude special damages from the jury's consideration and was in conflict with Instruction No. 2,[2] which was granted without objection by defendant.

"As in other cases of tort injuries, there are two general classes of compensatory damages allowable for defamation: (1) general damages, or those which the law presumes to be the natural, proximate, and necessary result of the publication; and (2) special damages, or those which, although a natural and probable consequence thereof, are not assumed to be necessary or inevitable, and must be shown by allegation and proof." 33 Am. Jur., Libel and Slander, § 200, p. 189.

---

[2] Instruction No. 2 reads as follows:

"The court instructs the jury that the law presumes damages to result from the uttering of false, slanderous or insulting words, and if you believe from a preponderance of the evidence that defendant, through its employees or agents, Rogers, Wood, Jessee and Wagner, or any one or more of them, used such words of and concerning the plaintiff, it is not necessary for the plaintiff to prove actual or pecuniary loss in order to recover, provided the Jury believe from the evidence, that the plaintiff is entitled to recover in this action."

In *Williams Printing Co.* v. *Saunders*, 113 Va. 156, 170, 73 S. E. 472, the court said: "The words alleged and proved to have been used by the defendant must have been injurious to the plaintiff's reputation, and are, therefore, actionable *per se;* and the plaintiff may recover a verdict for substantial damages without giving any evidence of pecuniary loss. Odgers on Libel and Slander, sec. 289. And at page 314 the same author says: 'Loss of custom or diminution of profits * * * is general, not special damage, and can only, therefore, be proved where the words are actionable *per se.*'

"And in 25 Cyc., p. 505, it is said: 'When the defamation complained of is one affecting plaintiff's business, from which the law presumes general damage, evidence of general diminution or loss of business is admissible in proof of general damages.'" See also, *James* v. *Haymes*, 160 Va. 253, 262, 168 S. E. 333.

As to special damages, the court in *M. Rosenberg & Sons* v. *Craft*, 182 Va. 512, 520, 29 S. E. 2d 375, quoted with approval from Newell on Slander and Libel, (4th ed.), § 556, p. 603, as follows: " 'Special damages are such as in fact have actually occurred as the result or consequences of the injury complained of, and not implied by law. They are either super-added to general damages arising from the act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves; or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences, as where words become actionable only by reason of special damage ensuing.' "

In 53 C. J. S., Libel and Slander, § 240, p. 363, it is said: "A successful plaintiff in an action for libel or slander is entitled to recover such actual or compensatory damages as are the natural and direct or proximate result of the publication but not speculative or remote damages, the rule applying to special as well as general damages." And in the same publication, § 242, p. 365, this is said: "Where the words are actionable per se as affecting plaintiff in his business or occupation, he is entitled to recover damages for the resulting general loss on falling off of his business, or injury to his occupation."

In the light of the foregoing principles it is apparent that when the jury was told in Instruction D that "they may not award the plaintiff any damages for direct loss of money, property, customers or business," they were in fact directed not to find any damages at all. The defamatory statements were spoken of and concerning the plaintiff

and his business; they were actionable *per se* and therefore substantial, general damages for injury to both plaintiff's business and personal reputation were presumed. Since these damages were the natural and direct or proximate result of the defamation, it was error to tell the jury they could not award them. Furthermore, Instruction D was not only misleading to the jury, but it was in conflict with Instruction No. 2, *supra*, footnote 2, and highly prejudicial to plaintiff.

The remaining assignments of error have been carefully considered and found without merit, but for the reasons stated the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*

Hudgins, C.J., and Eggleston, J., dissenting:

We are of opinion that there is no reversible error in the proceedings below and that the judgment should be affirmed.