829 F.2d 35
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ELECTRONIC RACE PATROL, INC., Plaintiff-Appellant,
v.
NEWS WORLD COMMUNICATIONS, INC.; Robert Groves, Defendant-Appellee.
 No. 86-1669
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1987.
Decided August 27, 1987.
 
 David Allen Sattler (George W. Campbell, Jr., on brief), for appellant.
 Allen Vern Farber (Keith R. Anderson; Kevin M. Dinan; Schwalb, Donnefeld, Bray & Silbert, on brief), for appellees.
 Before DONALD RUSSELL, ERVIN and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 This libel case arises out of an article published by News World Communications, Inc. in its newspaper, The Washington Times. The district court dismissed upon a Rule 12(b)(6) motion finding that the article did not identify the plaintiff and thus the complaint failed to state a claim for which relief could be granted. We believe that the article sufficiently identified the plaintiff, and we reverse and remand.
 
 
 2
 * The appellant, Electronic Race Patrol, Inc. (ERP) is engaged in broadcasting harness races. ERP claims to have been in the forefront of live satellite transmission of harness racing and maintains that it led the development of in-house racetrack commercials and interviews. ERP had exclusive contracts to broadcast races at two Maryland harness tracks, Rosecroft and Freestate Raceways.
 
 
 3
 On May 21, 1985, The Washington Times printed and distributed an article which ERP alleges to be defamatory. Sid Alpert mentioned in the article, is ERP's president. The article at issue reads as follows:
 
 
 4
 One of the best moves made on the Maryland harness-racing circuit during the past year was the decision by the managements of Rosecroft and Freestate Raceway not to renew Sid Alpert's in-house television contract.
 
 
 5
 Alpert's video equipment is outdated, and tormented racing fans with some of the worst possible pictures. Management at both tracks constantly had to answer patron complaints about the poor picture on the television monitors.
 
 
 6
 Racing fans deserve better, and now that is possible with a local company, International Sound Corporation, handling the television video. Their camera provides handicappers with the opportunity to watch clear pictures of a race; bettors can spot a horse that runs into traffic problems.
 
 
 7
 With the two tracks getting more involved with in-house television promotions, it is important that they have a company that wants to promote harness racing.
 
 
 8
 It is up to the harness tracks to educate the racing fan. Interviews with drivers and replays of feature races are two successful ways of doing that. International Sound is making that point much clearer than Alpert ever did.
 
 
 9
 In its complaint ERP alleged that readers of the article associated the article's defamatory content with ERP. The complaint alleged that the article was defamatory in several particulars: that ERP's equipment was state of the art, rather than obsolete, that the picture quality provided by ERP's monitors was superior and did not 'torment racing fans,' that management of the tracks did not have to 'constantly answer patron complaints about the poor picture on the television monitors . . .', that International Sound Corporation does not offer spectators better picture quality, and that the contracts were not renewed because of long standing disagreements between ERP and the tracks rather than poor service.
 
 
 10
 Before answering ERP's complaint, the defendants moved to dismiss this action pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the grounds that the law affords ERP no remedy since it is not named in the article.[1] The district court granted this motion and ERP appeals.
 
 II
 
 11
 In Virginia, a plaintiff must show that the alleged libel was published 'of or concerning' him. He need not show that he was mentioned by name in the publication. Instead, the plaintiff satisfies the requirement if he shows that the publication was intended to refer to him and would be so understood by people reading it who knew him. Powell v. Young, 144 S.E. 624, rev'd on other grounds, 145 S.E. 731 (1928); Butler v. News-Leader Co., 51 S.E. 213, (1905).
 
 
 12
 The article at issue appears in the context of a harness racing column which is most likely to be read by harness racing fans. In its complaint, ERP alleged that within that community of readers Sid Alpert was known to be the president of ERP and that readers would have associated the defamatory content of the article with ERP. Whether such an association actually occurred is a question of fact and is not amenable to summary adjudication. We conclude that the district court erred in dismissing this action on the grounds that the plaintiff was not identified by the publication.
 
 III
 
 13
 The defendants raise the issue of the fair comment doctrine, and argue that it bars this action. Virginia recognizes the right of her citizens to fair comment. James v. Haymes, 160 Va. 253, 168 S.E. 333 (1933). The fair comment doctrine has, however, fallen into disuse since the landmark decision in New York Times v. Sullivan, 376 U.S. 254 (1964). The most frequent application of the fair comment doctrine has traditionally been in cases brought by public figures and public officials. Defendants, who would have once raised the shield of fair comment, now find greater protection in the First Amendment.
 
 
 14
 The fair comment doctrine was further eroded in Justice Powell's now famous dicta in Gertz v. Robert Welsh, Inc., 418 U.S. 323 (1974). In these dicta, the Court suggested that opinion, however pernicious, is always shielded by the First Amendment. These dicta have subsumed the fair comment doctrine in most jurisdictions because the majority rule holds that the doctrine protects only expressions of opinion and true statements of fact. Phillips v. Evening Star Newspaper Co., 424 A.2d 78 (D.C. 1980), cert. denied, 451 U.S. 989 (1981). Since factual misstatements are not protected the fair comment doctrine affords a defendant no protection which is not already provided by the First Amendment in those jurisdictions applying the majority rule.
 
 
 15
 The minority rule does shield some misstatements of fact and may protect a defendant, who falls outside the protection of the First Amendment. However, the application of this rule usually presents factual questions which may not be resolved by a 12(b)(6) motion. Such is the present case. Virginia adheres to the minority rule and shields false statements of fact when: 1) the publication deals with a matter of public concern, 2) the false statements of fact are not defamatory per se, 3) the defendant made the statements for a proper purpose, 4) the statements were made in good faith, 5) the defendant had probable cause to believe and did believe that the statements were true, and 6) the comment or censure did not exceed the limits of fair and reasonable inference drawn from the facts stated. James v. Haymes, 163 Va. 873, 178 SE 18 (1935).
 
 
 16
 The facts in this case are in dispute and are not sufficiently developed to enable us to hold that fair comment doctrine applies, as the defendants maintain, so we remand this case to the district court for further proceedings.
 
 
 17
 REVERSED AND REMANDED.
 
 
 
 [1]
 Sid Alpert has brought another libel action in his own name against the same defendants